## VINTON CO NAT'L. BANK v HUNT et

Common Pleas Court, Vinton Co

Decided May 8, 1939

C. W. Smith, McArthur, for plaintiff.
Fred Murray, Logan, and Charles A. Slade, Columbus, for various defendants.

## OPINION

By CHATFIELD, J.

This case is submitted on the pleadings and briefs of the parties from which it appears that in September 1937 the defendant Blanche L. Hunt purchased from the Cussins & Fearne Company a list of plumbing supplies, together with bathtubs, furnace, septic tank, hot water equipment, sinks, lavatories, an electric pump and tank cylinder and air control, etc., said company taking as security for the purchase price a note and chattel mortgage which refers to a non-existent attached list for a description of the property intended to be conveyed by said mortgage. The following December said Blanche L. Hunt borrowed money from the plaintiff, the Vinton County National Bank of McArthur, Ohio, and as security therefor gave a mortgage upon the real estate into which the above mentioned chattel property had been incorporated. Thereafter said Blanche L Hunt borrowed money from the Farmers & Merchants Bank of Logan, Ohio, representing herself as owner of the said real estate subject to the mortgage of the Vinton County National Bank and gave said Farmers & Merchants Bank a note evidencing her indebtedness, which was thereafter reduced to judgment and said judgment recorded in the office of the clerk of courts of Vinton county pursuant to the so-called new Judgment Lien Law. The records of the instruments show recording in the order hereinabove described. The property consists of a summer lodge and some few acres of land described in the chattel mortgage as being in Swan township, Vinton county, Ohio, and was in the process of construction or completion at the time of the purchase from the Cussins & Fearne Company.

The petition of the plaintiff for foreclosure joins as parties-defendant Blanche

L. Hunt, mortgagor, the Cussins & Fearne Company and the Farmers & Merchants Bank of Logan, Ohio. The answer and contention of the Cussins & Fearne Company while not contesting the prior claim of the Vinton County National Bank, inclusive of the chattels old, except as to the electric pump which it claims as personal property and subject to no real estate lien, does not contend that its claim is prior to that of the judgment lienholder, the Farmers & Merchants Bank of Logan for the alleged reason that a judgment lienholder or creditor occupies the same position legally as would the debtor, Blanche L. Hunt who as between herself and the Cussins & Fearne Company is said not to be able to deny that company's right to remove the chattels. The answer of the Logan bank sets up its judgment lien as being secondary to the lien of the plaintiff but prior nevertheless to any claim of the Cussins & Fearne Company to the property, all of which is claimed to be real estate since the chattels were incorporated into the use of the property as a whole.

Somewhat elaborate briefs have been filed by respective counsel in the case and for which the court wishes to express its sincere appreciation. Considerable legal research as disclosed by the briefs and the research of the court has failed to disclose any reported authorities dealing with the respective rights by way of priority of liens as between a mortgagee of chattels allegedly or actually having become fixtures and a part of the realty and judgment lienholders, either prior or subsequent, in point of time with reference to the chattel mortgage.

The cases involving a determination of the nature of a fixture as distinguished from that of a mere chattel would seem to be almost as numerous as the constellations of outer space and almost as variable as interstellar spaces, but at the same time lacking in fixed principals assuring the possibility of anything like mathematical certainty such as is made available to the astronomer. Regardless of now the decisions vary respecting the law governing particular classes or the relationship of the parties concerned, they seem never to fail in recognizing that different rules apply to different classes of parties. (190 J. 95) "An article annexed to lands for some purposes, and as between certain parties, be regarded as part of the realty, while as respects other parties and objects, the same thing may be considered as retaining its character as personalty (Warner v Cleveland & T. R. Co., 22 Oh St. 563). The most recent en-

lightenment from the Supreme Court of Ohio upon the matter under discussion is contained in the case of **Holland Furnace Company v The Trumbull Savings & Loan Co., 135 Oh St 48, 13 OO 325.** It is repeated there by Judge Hart that a fixture is to be determined by the consideration of a combination of the following tests: 1. To become a fixture it is essential that the chattel in question be annexed to some extent to the realty. In the older authorities on this phase of the consideration of the characteristics of fixtures, it was commonly held that the attachment must be of such a nature that removal would result in some injury to the realty or the chattel itself. However, the years of increased credit selling have given rise to so many different factual circumstances in the individual case that the courts have found it necessary to relax this rule in varying degrees. In Ohio it would appear that this test is now least important and that slight actual or constructive attachment is sufficient to constitute a fixture. See in this connection **Twentieth Century Heating and Ventilating Company v Home Owner's Loan Corporation, 8 OO 237** and **Holland Furnace Company v Trumbull Savings & Loan Co., supra.** The chattels sold in this case as described heretofore, were of a character that necessitated attachment to the realty for use and in most instances removal would result in injury to this real estate. We must also bear in mind that this fact is recognized by the Cussins & Fearne Company which does not press its claim of chattel property as against the real estate mortgagee except as to ne electric pump. This court finds that the attachments of the chattels in this case were sufficient to meet with the requirements of this first mentioned test. A second test is whether the chattel had an appropriate application to the use or purpose to which the realty to which it is attached is devoted, in this case a country lodge or dwelling. It seems to this court that anyone who would purchase this property would naturally expect the chattels that have been attached to go with the purchase. The court finds that the combined functual use of these chattels, consisting of plumbing equipment, built-in bathtub, sinks, water heaters, electric pumps, lavatories and toilet accessories, furnace and piping supplies, etc., are of such character as to indicate to all persons dealing with the realty, whether as a basis for extending credit with or without a real estate mortgage, the intention and purpose of the owner of the chattel to make the combination a permanent attribute of the realty so as to pass in ownership with it. Holland Furnace Co. etc., supra.

We come now to the third and most important of the three modern tests as used in modern juridical considerations of the nature of fixtures. Was there an actual or apparent intention upon the part of the owner of the chattels affixing them to the realty to make such chattels a permanent part of that realty? There seems to be no question but what an owner of realty and the seller of chattels as between themselves may agree that certain chattels shall remain personalty as between themselves even though attached later to the realty. But as between the vendor and strangers to the contract, dealing with the realty, we have an entirely different question. In **Brennan v Whitaker (1864) 15 Oh St, 46,** it is said:

The filing of a chattel mortgage is made constructive notice only of encumbrances upon goods and chattels. The defendants purchased and took a conveyance of real estate of which the property now in question was, in law, a part and, in our opinion, it devolved upon the plaintiff, who sought to change the legal character of the property, and create encumbrances upon it, either to pursue the mode prescribed by law for encumbering the kind of estate to which it appeared to the world to belong, and for giving notice of such encumbrance, or otherwise, take the risk of its loss in case it should be sold and conveyed as part of the real estate to a purchaser without notice."

In **Case Mfg. Co. v Garven (1887), 45 Oh St 289** it was held that a retention of title by the seller of the fixture is ineffectual as against a subsequent bona fide mortgagee of the realty, without notice. Like reasoning and decision may be found in Triumph Electric Co. v Paterson (1914) 211 Fed. 244, an Arkansas case. See also **Brennan v Whitaker, 15 Oh St 446; 73 A.L.R. 767,** note, on proposition that subsequent mortgagee of realty without notice has priority of seller of chattel property who has taken means of personal property recordation for security and protection. Judge Hart in the Holland Furnace Co. case, supra, said that while it is claimed that such a rule tends to take the property of one person and give it to another without requiring it to be paid for, the answer to this claim is that the vendor of the chattel may have full protec-

tion if he follows proper legal processes. He then suggests mechanic's liens in this connection. In the 7th O. Jur. at page 371 it is said: "Where a chattel mortgage was attempted to embrace a leasehold interest of oil property, derricks and all property which was included in the equipment upon the premises, it was held to be a first lien upon the derricks, machinery and loose chattels upon the property at the ame the mortgage was executed, but such a mortgage being void as to the leasehold or interest in real property, the first lien was given to the mechanic's lien, the second lien to the execution creditors and the last to the mortgagee; but as to the newly constructed apparatus, the mechanic's 'en attached as a first lien, the levies of the execution were a second, the mortgage not covering the same." (Emphasis the writers.) The case was that of Acklin v Waltermier, 19 OCC 372. It is said in the notes of 73 A.L.R. at page 768 that although in Illinois the rule appears to be that a secret reservation of title to secure the purchase price is valid as against a subsequent encumbrancer the court held otherwise in Richey v Southern Gem Coal Co. where the property to which the seller reserved title under a conditional sale contract had become an integral part of the realty and the court is quoted in part as follows: "Surely it can not be said to have the right to remove this completed structure as against encumbrances for value, who from the examination of the premises would see no items of personal property, but only the integral whole of the real estate, and who upon an examination of the records would find no lien upon the real estate. As the seller agreed that the fixtures should be converted in all outward appearances into real property, he assumed the risk of their being sold as such, and it would be contrary to justice to allow the seller to save himself by casting the consequences upon the purchaser of the realty." The instant case involves chattels which from their very nature were expected to be incorporated into real estate and the court finds that the above quoted reasoning is also applicable to this case. No doubt there was an understanding as between the seller of the chattels and the owner of the property that they would remain chattels, but this fact was not actually or constructively brought to the attention of the subsequent mortgagee of the realty, nor to the creditor, now a judgment creditor, who extended credit after the chattels had been used in completing the dwelling: While no case exactly in point with this case involving as it does a

subsequent judgment lienholder has been found, it will be seen in Sternberger et v Ragland, 57 Oh St 148, that the grantee of an unrecorded deed did not take preference over a subsequent judgment creditor where at the time of taking the judgment, the judgment debtor appeared of record to be the owner of the real estate.

In that case, as in this, the argument was made that inasmuch as a judgment creditor could claim only so much as his debtor had, and the debtor had sold the property and delivered the deed, the creditor could claim nothing in the property as title passed before the judgment creditor got his judgment. While Sternberger and Willard were purchasers of the interest of the judgment creditor for value without notice, this court finds nothing in the reasoning of the court there, nor can it see in reason and justice why the holding would be different had the judgment creditor himself been involved in this suit rather than his assignee. The argument that a judgment creditor takes only what his debtor actually has is generally accepted as good law but rules of law are like tools used by an artisan. There are instances when one tool may be used quite as well as another and other instances where that particular tool would not serve at all in moulding the objectives of the workman and he must procure and use another more adapted to the purpose. The argument referred to in this case is found not to be applicable, to use it here would not in the court's opinion serve but to destroy the very purposes, which at the time it originated, it was meant to subserve—the purpose of justice. In this case, the court finds that the chattel property sold by Cussins & Fearne became realty as between the seller and the subsequent real estate mortgagee and the subsequent judgment creditor who has perfected a lien upon the real estate which appeared of record to be free of any such claim as that of Cussins & Fearne at the time he extended the credit which formed the basis of his subsequent judgment.

Some special concern has been given to the question as to whether the electric pump involved here became a fixture or is yet a chattel. This court for the reasons already given finds that it has become a fixture and is to be dealt with, at least as between the parties here involved, as real estate and not as personal property. On this point of the case the court finds that it is not without some specific precedent. The notes contained in 81 A. L. R. at page 1444 are here referred to. Particularly helpful are the cases there cited of McConnell v

Blood, 123 Mass. 47, and Cockshutt Plow Company v McLoughry, (1909), 2 Sash. L. R. 259. In the former it was held that, As between an assignee of the owner and a mortgagee of the realty, a steam pump, which was used to feed tanks furnishing the general water supply for a factory building and the water for a steam engine and boiler, and which was connected with the tanks by pipes, was a part of the realty. And the Cockshutt Plow Co. case, supra, is said to hold in effect that a windmill purchased under a contract of conditional sale by a vendee in possession of land under a contract of sale, and installed for the purpose of furnishing power for a sawmill and of pumping water for domestic use into a dwelling house to which the water was conveyed through pipes, was held to have been intended as a permanent improvement and to have become a part of the realty as between the conditional seller and the vendor of the realty, so as to pass to the latter on the cancellation of the contract for the sale of the land. See also Johnstown v Pacific Land Co., 80 Or. 356. In the instant case we have a rural dwelling in connection with which the pump in question is a most material part of the sole water system of the premises. As with the other chattels sold, the seller knew or in the usual course of things should have known that this pump and other equipment would be attached in some way to real estate, and in view of all the circumstances of the case the court finds that it became a part of the real estate or a fixture as between the seller and others who dealt with the owner of the real estate in direct or indirect reliance upon his ownership of the real estate as a basis for extending to him, the recorded owner of the realty, credit.

In the reply brief of The Cussins & Fearne Co. the court observes the statement of counsel that he had examined the record of the chattel mortgages in this county in December, 1938 and also the mortgage itself, which he says at that time had the list containing the description of the chattels attached to it. It is admitted they are not now described in the mortgage because of the said list being for some reason unavailable. For the reason that there is some question as to whether this chattel mortgage contained a description of the chattels, the court considers the case in the view of its having contained the description, and also in the view of its not having at any time contained a description of the chattels. In either event, the conclusions reached by the court in this case do not differ. On the assumption that this was a valid chattel mortgage and did contain a description of the chattels, the court holds that the filing of a chattel mortgage, as between the chattel mortgagee and subsequent real estate mortgagees and judgment creditors who had extended credit subsequent to attachment of the chattels to the real estate as fixtures in reliance, directly or indirectly, upon the apparent ownership of the realty by the chattel mortgagor, does not operate as actual or constructive notice to such subsequent creditors, it not otherwise appearing that they had actual knowledge of the chattel mortgagee's claim. "Were the rule otherwise", as said by Judge Hart in The Holland Furnace case supra, "it would in all probability become productive of injustices. The vendor knew that these furnaces would be placed upon the premises as a permanent accessory and essential to the occupation of the house as a dwelling." Such also is the case at hand. Such seems to have been the law of Ohio at least since 1864 when Brennan v Whitaker, 15 Oh St 446 was decided. See also Case Mfg. Co. v Garven, 45 Oh St 286, discussed supra.

If it is assumed that this chattel mortgage never contained a description of the chattels other than the general reference to an attached list that was not attached, and a general reference to the land on which they would be found, it conveyed no more estate or property than would a blank deed of real estate, signed and acknowledged by a grantor before witnesses and filed.

To hold otherwise would be to open a door to the validation or secret liens and fraudulent practices of a nature too broad, in this world of commercial credit and merchandising, to be within the conception of the most imaginative minds, and would result in defeat of the very purposes of the legislature in enacting the laws concerning the recordation of liens on property left in the hands of persons against whom the liens are intended to operate. Such liens are in derogation of the common law, and are granted by statute, but to entitle one to their benefits, at least a reasonable compliance with the statutory requirements is essential. Certainly an instrument purporting to describe property but which is absolutely blank can not be said to have been executed in substantial compliance with the intention of the legislature when it passed the law. It is said effectually in

Burke v Linkmyer, 13 O. C. C. (ns) 224 and in Barbin v Zetlmaier, 4 O. N. P. 154, that a mortgage in which the property which is mortgaged is not described with sufficient certainty is invalid as against creditors, subsequent purchasers and mortgagees of the mortgagor. See also in this connection Vol. 7 O. J. §33 on Chattel Mortgages.

It is therefore the holding of the court that The Vinton County National Bank, petitioner herein, is entitled to judgment and a first lien on the premises described in the petition inclusive of the fixtures, the Farmers & Merchants Bank of Logan is entitled to second lien upon said premises and fixtures, and the Cussins & Fearne Company is entitled to judgment and execution for the money alleged to be due to it and admitted in the answer of the defendant Blanche L. Hunt. And the said parties are awarded their respective costs against the said defendant Blanche L. Hunt. An entry so ordering may be drafted and order of sale issued in the usual manner.