68

MASHETER, DIR. OF HIGHWAYS, APPELLANT, *v.* BOEHM ET AL., APPELLEES.

[Cite as Masheter v. Boehm (1974), 37 Ohio St. 2d 68.]

(No. 73-468—Decided February 20, 1974.)

*Mr. William J. Brown,* attorney general, *Mr. Donald J. Guittar, Mr. Michael T. Gunner* and *Mr. Alan M. Wolk,* for appellant.

*Messrs. Merkel, Campbell, Dill & Zetzer, Mr. Michael T. Gavin, Mr. Eli Manos* and *Messrs. Marshman, Seeley & Snyder,* for appellees.

PAUL W. BROWN, J. The central question presented in this case is, at what point will personal property be considered to have become merged with the land or structures on the land appropriated, so that it must be deemed a part of the realty taken, and be compensated for in the condemnation award. For reasons set forth below, we find that the trial and appellate courts applied an erroneous test of law to the facts before them in determining the scope of the appropriation, and therefore we must reverse and remand.

the cause to the Probate Court for reconsideration consistent with this opinion.

The concept of personal property shedding its identity as personalty and assuming, from its relationship to land or structures situated thereon, the status of real property or fixtures, has bedeviled courts for years, and has continually stymied them in their efforts to formulate a comprehensive and generally applicable rule of law. Complicating the task is the need for definition in situations where the relationships between the parties differ, or where considerations of public policy point in different directions, *e. g.*, eminent domain, taxation, vendor-vendee, and mortgagor-mortgagee.

The director, in his appropriation petition, required by R. C. 163.05, announced his intent to appropriate appellees' interest in the real property therein described. It is a settled doctrine that, although personal property which has attained fixture status is part of the real property taken, personal property, per se, is not taken and is therefore not compensable. *Lucas* v. *Carney* (1958), 167 Ohio St. 416. In determining whether property is of such a nature as to be considered a part of the realty, reference must first be made to the landmark case of *Teaff* v. *Hewitt* (1853), 1 Ohio St. 511. In that case, a mortgagee of real property on which was located a woolen mill sought to enjoin holders of chattel mortgages against the mill owner from having execution made against various items of machinery and equipment to satisfy judgments against the insolvent mill owner. Considering the question of when such items become a part of the realty and when they remain personalty, the court held that:

"The true criterion of a fixture, is the united application of the following requisites, to wit: 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated. 3d. The intention of the party making the annexation, to make a permanent accession to the freehold."

The formula postulated in *Teaff, supra,* was adopted

by courts throughout the country as the fixed pole in the development of the law of fixtures. See, generally, 35 American Jurisprudence 2d 699, Fixtures, and 24 Ohio Jurisprudence 2d 343, Fixtures. As that body of law evolved, flesh was added to the bare bones of the tripartite *Teaff* test. Particularly in Ohio, refinements of the law were generated by cases where the relationship between the parties was other than that of condemner and condemnee, as in an appropriation proceeding. Although it is not proper to automatically apply to condemnation situations rules developed in non-condemnation cases, *e. g.*, where the transfer of property was voluntary, or where there was a contract defining rights in specific property, such rules are a valuable aid in appropriation proceedings.

The factor of physical annexation of personal property to the realty has come to be regarded as less determinative of fixture status than was formerly the case at common law. In *Holland Furnace Co.* v. *Trumbull Savings & Loan Co.* (1939), 135 Ohio St. 48, where the question was whether a warm-air furnace attached only by sections of pipe to the registers in a house was a fixture passing with the house upon foreclosure of the mortgage, this court declared that while there must be annexation to the realty to make a fixture of a chattel, the annexation may be slight. At page 53, the court stated that the annexation factor "* * *is now regarded as the least important [of the three-part formula of *Teaff, supra*], and slight attachment is sufficient if the other tests are met."

Thus, a chattel may be considered a fixture even though only slightly attached to the realty, as in *Holland, supra,* or though only constructively attached (*XXth Century Heating & Ventilating Co.* v. *Home Owners' Loan Corp.* [1937], **56 Ohio App. 188**), but will not necessarily be considered a fixture because of a high degree of attachment to the realty unless the other criteria are met, *Holland, supra.*

Of more importance in determining whether personal property has become a fixture is the intention of the party responsible for emplacing the item, and the use or purpose

to which it is put. The distinction made in *Fortman* v. *Goepper* (1863), 14 Ohio St. 558, between chattels primarily devoted to the business conducted on the premises and chattels devoted primarily to the realty itself was reaffirmed in *Zangerle* v. *Standard Oil Co.* (1945), 144 Ohio St. 506, and *Zangerle* v. *Republic Steel Corp.* (1945), 144 Ohio St. 529. Those cases dealt with the tax valuation of land and improvements used in heavy industrial operations. Unlike the instant case, in the *Zangerle* cases it was to the advantage of the landowner to have even the largest and most permanent of the installations considered as personal property, which was valued for the tax rolls at a lower percentage of its true value than was real property. The court in *Zangerle* v. *Republic Steel, supra,* held, in the seventh paragraph of the syllabus:

"The general principle to be kept in view in determining whether what once was a chattel has become a fixture is the distinction between the business which is carried on in or upon the premises, and the premises. The former is personal in its nature, and articles that are merely accessory to the business, and have been put upon the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character. * * *"

The necessary corollary to that principle is that articles annexed to the premises so as to become a part of it, even though of benefit to any and all businesses which might be carried on there, take on the legal characteristics of real property.

However, even in business fixture cases it is generally held that the intention of the annexing party is of primary importance. *Zangerle* v. *Standard Oil, supra* (144 Ohio St. 506). The intention to annex personal property so that it becomes a part of the realty, or the contrary, may

be manifested in a contract, *Silberman & Co.* v. *Acme House Wrecking Co.* (1928), 7 Ohio Law Abs. 471 (lease); *Citizens Savings & Trust Co.* v. *Cincinnati & Dayton Traction Co.* (1922), 106 Ohio St. 577 (mortgage); by the annexer's dealings with the annexed property, *Zangerle* v. *Standard Oil Co., supra,* or otherwise. Although there need be no formal declaration of intent by the annexer, it is generally held that the intent to have annexed property be considered as a part of the realty must be accompanied by some positive act or course of action clearly demonstrating the intent before the result will be as the annexer intended.

The requirement of a showing of intent applies differently in appropriation cases than in other situations. Although the relationship between the parties in appropriation cases is that of buyer and seller, as Justice Cardozo stated in *Jackson* v. *State* (1914), 213 N. Y. 34, 106 N. E. 758, they are not on the same footing as a *willing* buyer and a *willing* seller in a free market. Because there is no intent to buy or sell prior to the beginning of an appropriation proceeding, and no consideration has been given as to what other property would pass with the land, the law must apply the intention of the party who annexed personal property to the land. Where the announced intention of the condemner is to acquire only land and improvements thereon, it will not be required to pay for other annexed property which it does not want and for which it has no need unless fundamental notions of fairness require it to do so.

It is clear that the "fixture" question in a given case must ultimately be resolved by weighing the criteria prescribed by *Teaff, supra,* and its progeny, as the particular facts and circumstances dictate. Although some varieties of property, such as furnaces or plumbing systems installed in a dwelling, are generally held to be part of the realty (*Holland Furnace Co., supra.* [135 Ohio St. 48], and *Vinton County National Bank* v. *Hunt* [1939], 28 Ohio Law Abs. 694), each case must stand on its own facts.

A survey of appropriation cases in this state indicates

that the issue of what other property is taken with the land has been resolved under the general law of fixtures, as discussed above; no unique rule or interpretation of the general body of law has been applied. This is the case in a majority of other jurisdictions, although some have tried different approaches.

One such approach is known as the "assembled industrial plant" or "assembled economic unit" test. Under that test, in cases involving the passing of property under a chattel mortgage, personal property placed in an industrial or economic establishment for permanent use as a necessary component of an integrated economic operation becomes a part of the real property regardless of other tests. *Voorhis* v. *Freeman* (Pa. 1841), 2 W. & S. 116. The Pennsylvania courts applied the doctrine to variations of the industrial mortgage situation in *Voorhis, supra,* including appropriation proceedings; *Gottus* v. *Redevelopment Authority* (1967), 425 Pa. 584, 229 A. 2d 869; *Singer* v. *Oil City Redevelopment* (1970), 437 Pa. 55, 261 A. 2d 594.

In the instant case, the opinions of the Probate Court and the Court of Appeals make it clear that those courts committed error by applying the assembled-industrial-plant doctrine to the situation at hand, and finding all the machinery and equipment in question to have been "taken" by the state. While that doctrine may be attractive for its relative ease of application, this court remains convinced that it is too sweeping in scope and fails to take sufficient account of the particular facts present in individual cases. Thus we reject the doctrine, as have a growing number of our sister states.[2] It remains for the Probate Court to reconsider this case, and apply the proper rule of law, which provides that degree of flexibility and accommodation to circumstances necessary to ensure that both the director and the landowners will be dealt with fairly, with neither

---

[2]States which have refused to recognize the doctrine include Alabama, Delaware, Florida, Indiana, Maryland, Minnesota, New Hampshire, New York, Oklahoma and West Virginia.

enjoying a windfall gain nor suffering unfair deprivation.

In joining those other states which have considered and rejected the assembled-industrial-plant doctrine, we hold that the fact that machinery and equipment is installed with some permanence on land or in a structure as part of an integrated industrial or economic operation will not of itself require that all such items be deemed a part of the real property taken in an appropriation proceeding. We reaffirm that such a determination must be made in light of the particular facts of each case, taking into account such facts as the nature of the property; the manner in which it is annexed to the realty; the purpose for which annexation is made; the intention of the annexing party to make the property a part of the realty and dedicate it irrevocably to the realty for a particular use; the degree of difficulty and the extent of any economic loss involved in thereafter removing it from the realty; and the damage to the severed property which removal would cause.

Where, in an appropriation proceeding, there is no substantial dispute of material fact concerning the identity, nature and function of property for which "fixture" status is sought, determination of the extent of the taking is a question of law to be decided by the court. That determination is properly made preliminary to the submission of the question of valuation to the jury, *i. e.*, it is a threshold question to be resolved before the issue of valuation can be considered. This is consistent with R. C. 163.14, which restricts the jury to the role of assessor of the value of the taking in an appropriation proceeding. The necessity of determining the scope of the appropriation, *in limine,* is highlighted by the result in the instant case.

Here, the trial court, although properly of the view that the issue was to be decided by the court, failed to define the extent of the taking before the question of valuation was submitted to the jury. Subsequently, during the trial, testimony was offered to show the value of numerous items of personal property which, had the proper test

been applied by the court, would likely have been found to be uncompensable personal property. It is to prevent the confusion and unfairness which may easily result from needlessly inundating the jury with immaterial testimony that we find a preliminary determination of the scope of the taking to be both necessary and proper.

Appellant also assigns as error in the trial the form of the jury verdict, which made separate awards for land and improvements, structures, and fixtures taken. Appellant not only failed to object to this form of the verdict at the time the trial court instructed the jury to make the specific division of its award, but he did not assign it as error in the Court of Appeals. In fact, all indications are that the appellant acquiesced in the form of the verdict. Such a verdict form contravenes R. C. 163.14 and 163.01. In an appropriation proceeding, a jury is directed by R. C. 163.14 to assess compensation for the "property appropriated," including "a building or other structure * * * on the property appropriated." "Property" is defined in R. C. 163.01 to include:

"* * * any estate, title, or interest in any *real property* which is authorized to be appropriated by the agency in question * * *." (Emphasis added.)

Items properly taken as "fixtures" have lost their former identity as personal property; therefore, the making of a separate award for "fixtures" is not consonant with those statutes. Fortunately, we are not confronted in this case with the necessity of deciding whether such an erroneous form of jury verdict, standing alone, would require reversal.

For the foregoing reasons, the judgment of the Court of Appeals is reversed and the cause is remanded to the Probate Court for further proceedings.

*Judgment reversed.*

O'NEILL, C. J., CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

HERBERT, J., concurs in paragraphs one and four of the syllabus and in the judgment.