VILLAGE OF SCOTT, Appellee,

v.

KEYSOR, Appellant.

[Cite as *Scott v. Keysor* (1999), 132 Ohio App.3d 456.]

Court of Appeals of Ohio,
Third District, Paulding County.

No. 11–98–10.

Decided March 31, 1999.

*David A. Hyman,* for appellee.

*W. Edward Hatcher,* for appellant.

SHAW, Judge.

Appellant, George Keysor, appeals from the Paulding County Court of Common Pleas judgment entered on a jury verdict awarding him $20,000 in an appropriation proceeding.

Appellant owns 10.932 acres of land located in Paulding County, which he bought in 1992 for $3,000. This is a strip of land approximately one hundred feet wide and extending almost a mile. It was formerly owned by Cincinnati Northern Railroad, which had laid railroad track on it. At the time of appellant's purchase, the track had been removed, but the stone ballast, which had been underneath the track, remained. In 1993, appellant began to remove the stone ballast and to use it at his business for certain improvements.

On May 21, 1997, the village of Scott, appellee, brought this action to appropriate appellant's real estate for use as a nature trail. It subsequently sought to enjoin appellant from either excavating or removing the stone and soil from the

land. The trial court treated appellee's motion as a request for injunctive relief and granted it.

At the beginning of the jury trial in this appropriation proceeding, appellee moved to prevent appellant's expert from placing a separate valuation upon the stone ballast on the land to be appropriated. The trial court granted the motion and barred any expert testimony relating to separate valuation, but did allow the expert to testify that there is stone ballast on the property and that it does have some bearing on the value of the land.

During the trial, each party presented expert testimony as to the fair market value of the land. Appellant's expert valued the land at $22,000, based upon its highest and best use for agriculture. This witness also testified that his appraisal was based upon the assumption that the remaining stone ballast would be removed from the land. In addition, appellant presented the testimony of a witness who is in the stone-hauling business. He testified only that the stone ballast had a substantial value. Appellant's counsel proffered the excluded testimony of this witness. His testimony would have valued the remaining stone ballast by multiplying the tonnage of 15,400 by the value of the stone of $3.72 per ton for the total of $57,288. Counsel also proffered appellant's testimony as to the estimate of the total number of tons of stone ballast remaining on the property. This stone ballast had an average width of seven yards at an average depth of two and one-half feet.

On the other hand, appellee's expert witness testified that the fair market value of the land was $8,700 as of August 15, 1996. His appraisal was based upon comparable sales of railroad right-of-way property, since he estimated that eighty percent of this type of land still remains idle land. In fact, the tenor of appellee's expert's testimony was that it would not be economically feasible to return the land to agricultural use.

The jury awarded appellant $20,000 for the land taken, and judgment was entered on the verdict. Appellant now appeals, and, for his sole assignment of error, asserts:

"The trial court committed an error of law by granting the plaintiff/appellee's motion in limine and thus failing to properly define the extent of the taking prior to submission of the question of valuation to the jury."

Appellant contends that the stone ballast was personal property and that the trial court failed to properly define the scope of the property being taken. His expert's testimony was proffered to show the value of the remaining stone ballast by a price per ton. It is the appellee's position that the stone ballast was a fixture and therefore appellant's expert could not separately value it apart from

the land taken. Thus, the issue raised in this appeal is whether the stone ballast is personal property or a fixture.

In *Masheter v. Boehm* (1974), 37 Ohio St.2d 68, 66 O.O.2d 183, 307 N.E.2d 533, the Ohio Supreme Court set forth the factors to be applied in an appropriation proceeding to determine the status of property. The court, in paragraph two of the syllabus, stated:

"The determination of whether an item is a fixture, passing with the real property in an appropriation proceeding, must be made in light of the particular facts of each case, taking into account such facts as the nature of the property; the manner in which it is annexed to the realty; the purpose for which the annexation is made; the intention of the annexing party to make the property a part of the realty; the degree of difficulty and extent of any loss involved in removing the property from the realty; and the damage to the severed property which such removal would cause."

The rationale offered for applying the intention of the party who annexed the personal property to the land is that the buyer/seller relationship is different in appropriation cases than in a free market. *Id.* at 75, 66 O.O.2d at 187, 307 N.E.2d at 539. Thus, where the appropriating authority has announced its intention to take only the real property, "it will not be required to pay for other annexed property which it does not want and for which it has no need *unless fundamental notions of fairness require it to do so.*" (Emphasis added.) *Id.* The court has concluded that where no substantial dispute of material fact exists concerning the identity of the property, the determination of the extent of the taking is a question of law to be decided by the court before submitting the question of valuation to the jury. *Id.* at 77, 66 O.O.2d at 188, 307 N.E.2d at 540.

It is well established that although personal property that has attained fixture status is part of the real property taken, personal property, *per se,* is not taken and, therefore, its loss is not compensable. *Id.* at 72, 66 O.O.2d at 185, 307 N.E.2d at 537, citing *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238. The law of fixtures, as discussed above, provides that degree of flexibility and accommodation to circumstances necessary to ensure that neither party in the appropriation proceeding enjoys a windfall or suffers unfair deprivation. *Id.* at 76–77, 66 O.O.2d at 188, 307 N.E.2d at 539–540. As a general proposition, the Ohio Supreme Court has stated that mineral deposits, standing crops, and timber are not to be valued in an appropriation proceeding separately from the land upon which they are located. *Bd. of Park Commrs. v. DeBolt* (1984), 15 Ohio St.3d 376, 378, 15 OBR 494, 495–496, 474 N.E.2d 317, 319. In *In re Appropriation of Easements For Highway Purposes* (1963), 174 Ohio St. 441, 445, 23 O.O.2d 100, 101–102, 190 N.E.2d 446, 449–450, the court concluded that

the waste materials from an abandoned quarry were to be regarded as an appurtenance to the land and therefore not personal property.

■ In this case, the appellant's land-value expert testified that the highest and best use for the land to be taken was agriculture. Appellant's counsel then proffered the testimony of a different expert regarding separate valuation of the stone ballast. Although the proffer indicated what the fair market value of the stone would be, this proffer was not sufficient on the issue of value because it failed to set forth the cost of removal. Clearly, the cost to remove the stone is a factor to be considered in determining the fair market value of the stone. There is also no direct evidence in the record on the cost.

Moreover, appellant wanted to present evidence as to what the stone ballast is worth as personal property rather than to increase the value of the realty as a structure or fixture. It is stated in appellant's brief that the "trial court in this case failed to properly define the scope of the taking to include the personal property on the appropriated land." However, personal property, *per se,* is not subject to eminent domain and, therefore, is not compensable in an appropriation proceeding. *Masheter, supra.* Indeed, if anything, personal property is to be removed by its owner.

While the trial court had granted a preliminary injunction enjoining removal of the stone, the issue before the court in the appropriation proceedings was whether the stone ballast constituted a compensable structure or a fixture or was appellant's personal property. The court held that the stone ballast was to be included in the valuation of the real property, but it was not subject to separate valuation. In essence, the court found that the stone ballast was classified as a fixture. Thus, the value of the land fixed by appellant's expert witnesses could reflect the fact that the land contains stone ballast. Instead, appellant's land-value expert testified that the highest and best use for the land was agriculture and assumed the removal of the stone ballast. Even though the trial court did sustain appellee's motion *in limine* at the opening of the jury trial, appellant's land-value expert had prepared his appraisal of the land on September 23, 1997, about ten months before the jury trial began. Thus, the appellant was not precluded from presenting evidence as to the value of the stone ballast; he was only prevented from making a valuation of it separate from the land.

As an aside, we note that appellant was entitled to present evidence that the highest and best use to which the land could reasonably be adapted was for the purpose of the nature trail. The appellee intended to use the stone ballast for the construction of such a trail. However, appellant did not do so in this case, and we do not speculate as to what effect that evidence could have had upon the expert witnesses' valuation and that affixed by the jury.

Finally, the record supports a finding that the stone ballast was a fixture. It was set in the ground under the former railroad track, which is no longer in place. The laid track material is of such a large nature and generally annexed in a permanent manner for railroad operation. See *State ex rel. Fisher v. Waterfront Elec. Ry., Inc.* (1993), 63 Ohio Misc.2d 507, 514–515, 635 N.E.2d 81, 85–86 (finding laid track materials and railroad signs and signals were of such a large and/or firmly affixed nature that those items were intended to become a permanent part of the real property and were fixtures). Again, there was no direct evidence on the cost of removal, nor would the proffered testimony have shown the cost.

Accordingly, since the stone ballast in place was not subject to separate valuation, the trial court did not err in excluding testimony relative to the market value of the stone ballast that appellant's counsel sought to introduce. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

HADLEY, J., concurs in judgment only.

THOMAS F. BRYANT, P.J., concurs separately.

THOMAS F. BRYANT, Presiding Judge, concurring separately.

I do not concur in the majority's reasoning or opinion, and although I believe the trial court committed error in the exclusion of evidence, I concur in the judgment because I cannot in conscience certify pursuant to R.C. 2309.59 that substantial justice was not done the appellant by the jury's verdict and the judgment entered thereon.