OPINION
Appellant, Maureen P. Alteno, appeals from the judgment of the Trumbull County Court of Common Pleas. The court granted the parties a divorce based on incompatibility.
Appellant and appellee, Leonidas J. Alteno, were married on September 8, 1973. The marriage produced two children, John, born on November 10, 1979, and Andrew, born on August 30, 1983. On March 23, 1998, a temporary child support order was issued.
The parties stipulated to many of the issues of their separation, and the trial court found these stipulations to be fair. With respect to other issues, however, the parties could not come to an agreement and they were decided by the court.
All four of appellant's assignments of error concern the trial court's distribution of property. The applicable standard of review for the division of marital assets has been set forth by this court as follows:
 "It is well established that in a domestic relations case, a trial court is given broad discretion in formulating its division of the marital assets and liabilities. Cherry v. Cherry (1981), 66 Ohio St.2d 348. A reviewing court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. The Supreme Court of Ohio has held that the term `abuse of discretion' implies that the court's attitude is arbitrary, unreasonable or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157-158. Accord Blackmore v. Blackmore (1983), 5 Ohio St.3d 217." Balogh v. Balogh (Dec. 29, 1995), Portage App. No. 94-P-0099, unreported, 1995 Ohio App. LEXIS 5851, at *5.
Appellant's first assignment of error is:
 "The trial court erred, as a matter of law, by failing to grant appellant the amount of premarital monies contributed by appellant to the marital residence as her separate property."
Prior to the parties' marriage, appellant lived in a house at 4561 New England Boulevard, Boardman Township, Ohio ("New England property"). Appellant paid all of the bills for the New England property, although it was titled in the names of her parents, Andrew and Mary McElwee. Appellee stipulated that appellant was the equitable owner of this property. After the parties were married in 1973, appellee moved into the New England property residence, and the parties lived there together until the property was sold in 1978. The mortgage payments were paid out of marital funds for these five years. The trial court also found that marital funds were used for improvements to this property.
The proceeds of the sale went to the McElwees, as record titleholders. The McElwees opened a separate savings account and deposited the proceeds of the sale, $32,947.64. This money was used for the construction of a residence on 1283 Sterling Drive, Cortland, Ohio ("Sterling property"). The house was built by Mr. McElwee, who was the general contractor. Appellee testified that he helped with various aspects of the construction. The house took three years to build, and the parties moved into the house in 1981.
Two years later, at the request of appellant, the McElwees transferred title of the Sterling property into the names of appellant and appellee. The trial court found this to be a gift. The trial court determined that this transaction constituted a transmutation of any separate property interest appellant had in the $32,000 savings account into marital property.
Appellant asserts that the trial court erred in finding that this $32,000 was marital property. Appellant further asserts that the $32,000 in equity she had in the original house should have been deducted from the agreed upon value of the Sterling property, and that the remaining value of the property split equally between the parties. The trial court, by finding there was a transmutation of the $32,000, held that the entire property was marital, and should be split equally between the parties.
Marital property is property that was acquired by either party during the marriage. R.C. 3105.17.1(A)(3)(a)(ii). Separate property is, for the purposes of this analysis, property that was acquired by one spouse prior to the date of marriage. R.C. 3105.17.1(A)(6)(a)(ii).
Some courts in Ohio have taken the approach that transmutation has been nearly abolished by the enactment of R.C. 3105.17.1(A)(6)(b), which states "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property, except when the separate property is not traceable." However, "[t]his court has taken the middle ground and held that it is error to solely rely on the doctrine of transmutation without addressing the traceability of funds." (Citations omitted.) Letson v. Letson (Sept. 30, 1997), Trumbull App. No. 95-T-5356, unreported, 1997 Ohio App. LEXIS 4445, at *10-11.
In this case, the trial court addressed the traceability of funds, and found that funds from the New England property were used to construct the Sterling property. The court then addressed the transmutation issue, finding that the transfer of title was a transmutation of the property. The Twelfth District Court of Appeals has adopted the following analysis for determining if transmutation has occurred:
 "[T]he trial court, within its sound discretion, should consider (1) the expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties. Banks-Baldwin's Ohio Domestic Relations Law (1987), Section T-25.02(H)." Kuehn v. Kuehn (1988), 55 Ohio App.3d 245, 246.
In applying these factors, the trial court could have come to the determination that the Sterling property was marital property by transmutation without abusing its discretion. The initial source of funds came from the sale of the New England property, on which marital funds were used. The property was transferred to both parties at the request of appellant. This transfer occurred fifteen years before the separation. These all support a finding that the Sterling property is marital property.
There was testimony from appellant and appellant's mother that the transfer of the property occurred by inducement. They testified that the appellee had indicated he would not live in the house if it was not in his name. This alone, even if true, is not enough for us to find that the trial court abused its discretion in determining that the Sterling property was marital property.
Appellant's first assignment of error is without merit.
Appellant's second assignment of error is:
 "The trial court erred in finding certain marital assets to b[e] held in trust for a third party."
There are two properties at issue in this assignment of error. The first property is 47 Dehoff Drive, Austintown, Ohio ("Dehoff property"), and the other property is 207 South Four Mile Run Road, Austintown, Ohio ("Four Mile Run property"). The trial court found the Dehoff property to be held by appellee in a "resulting trust" for James Hernan. The trial court found the Four Mile Run property to be held by both parties in a "constructive trust," also for Mr. Hernan.
Mr. Hernan is a life-long friend of appellee. Mr. Hernan originally owned the Dehoff property. There were liens placed on the property, and eventually the property was subject to a foreclosure sale. Mr. Hernan sought the help of appellee, and appellee attended the Sheriff's sale with him. Appellee purchased the Dehoff property for Mr. Hernan, in order to prevent him from losing his house. The property is titled in appellee's name. Appellee loaned $2,500 to Mr. Hernan for the closing costs associated with this property. This money was repaid to appellee. Appellant and appellee also executed a mortgage on the property. Mr. Hernan makes the mortgage payments and pays all other costs relating to the property. The property is insured by a policy in appellee's name. Both Mr. Hernan and appellee testified that Mr. Hernan reimburses appellee for the insurance premiums every time appellee pays them.
The trial court held that appellee is a resulting trustee of the Dehoff property for the equitable owner, Mr. Hernan. A resulting trust is an equitable trust, which seeks to enforce the intention of the parties.Bilovocki v. Marimberga (1979), 62 Ohio App.2d 169, 172. In Bilovocki, the court noted that:
 "A resulting trust has been defined as `one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title.'" Id. citing The First National Bank of Cincinnati v. Tenney (1956), 165 Ohio St. 513, 515-516.
Applying this definition to the case sub judice, it is apparent that the beneficial use of the Dehoff property is not intended to be enjoyed by either of the parties. Appellee purchased the property solely for the benefit of his friend, Mr. Hernan. None of the testimony of the witnesses indicates that appellee or appellant ever intended to use or own the Dehoff property. Conversely, the testimony of appellee and Mr. Hernan make it clear that Mr. Hernan was intended to have beneficial use of the Dehoff property.
This specific type of resulting trust is known as a purchase-money resulting trust. A purchase-money resulting trust occurs "when property is transferred to one person, but the entire purchase price is paid by another." Glick v. Dolin (1992), 80 Ohio App.3d 592, 597, citing Restatement of the Law 2d, Trusts (1959) 393, Section 440; and 5 Scott on Trusts (4 Ed. 1967), Section 440. Here, the Dehoff property was transferred to appellee, and Mr. Hernan intends to pay the entire purchase price. Mr. Dehoff has not paid the entire purchase price to date, as a mortgage in the parties' names remains on the property. However, Mr. Hernan would currently have an interest in proportion to the amount he has paid. Id. at 599.
Appellant raises the issue of the mortgage on the Dehoff property that is in both parties' names. This does not prevent the creation of a resulting trust. Appellee correctly notes that the facts of this case are similar to those in Perich-Varie v. Varie (Aug. 27, 1999), Trumbull App. No. 98-T-0029, unreported, 1999 Ohio App. LEXIS 3990. In Perich-Varie, the Varies paid the down payment on a house and made mortgage payments on the house. However, the house was titled, and the mortgage was executed, in the names of Mr. Varie's parents, the DeMasis. We held that a resulting trust was created in Mr. Varie.
We held in Perich-Varie that mortgagors of a property that is in a resulting trust must not be compelled to transfer the property, without absolution from liability on the mortgage note. Here the trial court did not order that either party transfer his or her interest in the Dehoff property. The trial court merely found that it was not separate or marital property that was subject to division in the divorce proceeding. InPerich-Varie, although we held that mortgagors could not be required to transfer the property without absolution, we still held that a resulting trust existed. Id. The following example is also helpful in this case:
 "X is the owner of Blackacre. A purchases Blackacre from X for $10,000, $4,000 to be paid in cash, the balance to be secured by a mortgage on the land. A pays X $4,000 and at A's direction X conveys Blackacre to B who gives X his note for $6,000 secured by a purchase-money mortgage on Blackacre. In the absence of other evidence, B holds Blackacre upon a resulting trust for A, but cannot be compelled to convey to A until A pays off the mortgage." Id. at *13-14, citing Restatement of the Law 2d Trusts (1959) 431, Section 456, Illustration 8.
This is a nearly identical hypothetical to the instant case. Mr. Hernan essentially paid the down payment, as he has repaid appellee. Mr. Hernan pays the mortgage on the property. Therefore, appellee holds the Dehoff property in a resulting trust for Mr. Hernan.
Mr. Hernan purchased the Four Mile Run property years ago, for use in his business. However, the property was titled in his mother's name because of Mr. Hernan's credit problems. Due to his mother's advancing age, she transferred the property to appellee and appellant. There was no consideration paid for this transfer. Neither of the parties has paid any expenses relating to this property. This property is not subject to any mortgages.
The trial court held that appellee and appellant were constructive trustees of the Four Mile Run property for Mr. Hernan. A constructive trust is another equitable trust that has been defined as "a remedial device for the prevention of fraud and unjust enrichment." Bilovocki, at 171.
 "`A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it. Ordinarily, a constructive trust arises without regard to the intention of the person who transferred the property.' 5 Scott on Trusts, Section 404.2 (1967)." (Emphasis in original.) Id. at 171-172.
Appellee and/or appellant would be unjustly enriched if the Four Mile Run property was considered marital property or separate property. This is because neither of them paid any consideration for the property. They would effectively get something in exchange for paying nothing, a perfect example of unjust enrichment.
We do not condone the actions of Mr. Hernan and the parties. Obviously, both of these transactions were done solely to avoid Mr. Hernan's creditors. However, for the purposes of this case, the trial court was correct in determining that the properties were neither marital property, nor separate property. This is because Mr. Hernan is the intended beneficiary of both properties. Appellant's second assignment of error is not well taken.
Appellant's third assignment of error is:
 "The trial court erred by failing to include all of appellee's military income in its calculation of child support."
On March 23, 1998, the magistrate issued a temporary order for child support to be paid from appellee to appellant. According to the order, appellee was required to make a monthly payment to appellant of $687.50 until June 30, 1998, for support of their children. Effective July 1, 1998, the monthly payment was reduced to $478.08, because John would be emancipated as of that date. This figure was calculated based on appellee's income of $47,840. It did not include an additional $10,000 of appellee's military income. Appellant requested a hearing to modify this order, to include the additional income, pursuant to Civ.R. 75(N)(2). At the hearing the magistrate refused to modify the order. Appellant again raised this issue in the final divorce hearings. Appellant requested the trial court retroactively adjust the child support to reflect the additional $10,000 in income. The trial court refused to modify the temporary support order. The trial court accepted the parties' stipulation for child support in its final judgment entry and decree of divorce. According to the stipulation, appellee was to pay appellant a monthly payment of $509.49, plus a two percent poundage charge. This final child support agreement is not contested on appeal.
In reviewing a temporary child support award, the reviewing court is presented with a delicate balancing test. The recipient wants the award to be perfect and precise to ensure full payment. This is unrealistic. The magistrate must make a determination quickly, often with only limited evidence. Temporary orders for support are pendente lite. The very nature of temporary support orders is "`to preserve the status quo during the proceeding.'" (Citations omitted.) Ward v. Ward (May 4, 2000), Franklin App. No. 99AP-66, unreported, 2000 Ohio App. LEXIS 1934, at *16. If we required the same precision for temporary orders as is required for final orders, temporary orders would take nearly as long to be issued as final orders, thus defeating their purpose.On the other side of the scale, there is a very strong interest not to reward the obligor for concealing information or assets. The Ohio Rules of Civil Procedure provide a remedy for a party who feels that a temporary award is unfair. A party can request a hearing, as appellant did in this case, pursuant to Civ.R. 75(N)(2). If a party is still unhappy with the outcome, they may ask the trial court to award an arrearage in the final decree, as appellant essentially did in this case. The trial court may then choose to award an arrearage after examining the facts. The trial court would be especially encouraged to do this if there were evidence of fraud or deceit. However, absent an abuse of discretion, that decision will not be disturbed by an appellate court.
In this case, we do not find that the trial court abused its discretion in not awarding the arrearage to appellant. It was not error to accept the stipulations and refuse to modify the temporary order through an award of arrearage. Finding no abuse of discretion by the trial court, appellant's third assignment of error is overruled.
Appellant's final assignment of error is:
 "The trial court erred by awarding fixtures of the marital residence to appellee as separate property."
Appellant asserts that two items of property, two lead glass doors and a hanging dining room lamp, were improperly classified by the trial court as separate property. Appellant argues that these items were attached to the marital residence, and should be classified as fixtures. The house was distributed to appellant through the stipulations, but these items were awarded to appellee by the trial court as separate property.
There are several factors courts should take into consideration when determining whether a specific item of personal property is attached to real property in a way that makes it a fixture. Some of the factors include:
 "[T]he nature of the property; the manner in which it is annexed to the reality; the purpose for which the annexation is made; the intention of the annexing party to make the property a part of the reality; the degree of difficulty and extent of any loss involved in removing the property from the realty; and the damage to the severed property which such removal would cause." Masheter v. Boehm (1974), 37 Ohio St.2d 68, paragraph two of the syllabus.
The lamp, valued at $95, was removed from a prior residence of appellee, and installed in the marital residence. The hanging dining room lamp does not constitute a fixture.
Next, we will consider the two lead glass doors. These doors, which combined have a value of $70, are built into the entertainment center. These doors were also removed from appellee's prior residence. The entertainment center itself was not a fixture, as it is listed as personal property, not as a fixture, in the appraisals. Since the entertainment center itself is not a fixture, it is irrelevant to determine how these doors were attached to the entertainment center. This is because one item of personal property attached to another item of personal property does not make it a fixture. Therefore, the doors are not fixtures.
The trial court did not err in finding these items to be personal property, rather than fixtures. Accordingly, appellant's fourth assignment of error is also without merit.
The judgment of the trial court is affirmed.
NADER, J., concurs, GRENDELL, J., concurs in part, dissents in part, with Concurring/Dissenting Opinion.