Stewart, J.
 

 The complainants are pottery manufacturers, Roseville manufacturing decorated art ware and Mosaic manufacturing floor tile, wall tile and bathroom accessories. The records do not' disclose the source of the clay used by either Roseville or Mosaic.
 

 The tunnel kiln belonging to Roseville is about 245 feet long, about 10 feet wide and about 10 feet high. The six tunnel kilns belonging to Mosaic are from 265 feet to 340 feet long, about 11 feet wide and 7 feet high.
 

 The kilns stand on cement slabs in solid connection with the floors of the buildings in which the kilns are located. They are built with outsides of either common brick or metal, about four inches thick, and next to the brick or metal, in each kiln, is an insulating layer followed by another layer of refractory material. The kilns are held together by steel buck stays. In the concrete slab, upon which each kiln rests, are laid narrow-gauge tracks. The molded damp clay is loaded
 
 *92
 
 on cars which are pushed on these tracks through the kilns. The pushing is accomplished by an hydraulic ram which pushes one car and, after the car is in the kiln a certain distance, pushes another behind it, and so on in a continuous operation. In this way, the ware which is being manufactured is preheated, fired and cooled, dazed ware goes through the kiln twice.
 

 The kilns are equipped with heating apparatuses, pyrometer equipment to control the heat, temperature indicators, fans, blowers, ducts, exhausters, compressors and other items. All of these are essential to the efficient operation of the kilns and all are. easily movable and removable, mostly by loosening bolts.
 

 All the kilns were designed by engineers for specific ceramic manufacture and cannot be used in other industries or for the manufacture of different ceramic wa-re unless changed entirely in design. They can be knocked down and moved to other locations and the records recite several instances where similar kilns have been so handled. Trade papers advertise kilns of this sort for sale and removal. The tracks in the kiln can be removed, although the cement slab, left after moving a kiln, is demolished by the removal of the tracks.
 

 Are these kilns and their accéssories real property or personal property for taxation purposes?
 

 Prior to 1931, for the purposes of taxation, it practically made no difference to an owner whether his property was real or personal, for the reason that all property was required to be taxed at its true value in money, and there was no discrimination among various classes of property. However-, in that year the people amended Section 2 of Article XII of the Constitution of Ohio which now provides,
 
 inter alia:
 

 “Land and improvements thereon shall be taxed by uniform rule according to value.”
 

 Since only land and improvements thereon are required to be taxed uniformly according to valúe, the
 
 *93
 
 General Assembly has the power to classify personal property for taxation.
 

 , Section 5388, General Code, provides in part as follows :
 

 “Personal property of the following kinds, used in business, shall be listed and assessed at fifty per centum of the true value thereof, in money, on the day as of which it is required to be listed, or on the days or at the times as of which it is required to be estimated on the average basis, as the case may be:
 

 “(1) All engines, machinery, tools and implements of a manufacturer mentioned in Section 5386 of the General Co'de, and all engines and machinery of every description used, or designed to be used in mining, and all tools and implements of every kind used, or designed to be used for such purpose, excepting as provided in the last paragraph of this section, and all engines, machinery, tools and implements used in stone plants and gravel plants, and all engines, machinery, tools, implements and domestic animals used in agriculture, and all machinery, implements and tools used in laundries, towel and linen supply and dry cleaning plants, except as any of the kinds of property mentioned in this paragraph may have been legally regarded as imT provements on land and considered in arriving at the value of real property assessed for taxation.”
 

 Section 5386, referred to in Section 5388,
 
 supra,
 
 is as follows:
 

 “A manufacturer shall also list all engines and machinery of every description used, or designed to be used, in refining or manufacturing, and all tools and implements of every kind used, or designed to be used, for such purpose, owned or used by such manufacturer.”
 

 If the items with which these appeals are concerned are improvements on land, they must be taxed at 100 per cent of their value, whereas if they are personal
 
 *94
 
 property, they must be taxed at 50 per cent of their value.
 

 Improvements on land, if not fixtures, are at least analogous to them, and the law of fixtures is one which is frequently difficult to apply to a given state of facts.
 

 We have, fortunately, the case of
 
 Teaff
 
 v.
 
 Hewitt,
 
 1 Ohio St., 511, 59 Am. Dec., 634, which is probably the landmark case on this subject. That case has been cited and followed, not only by this court but by courts all over the nation, through the nearly 100 years since that case was decided.
 

 The
 
 Teaff case
 
 concerned a controversy between a mortgagee and judgment creditors of the mortgagor, with reference to machinery in a woolen mill, and the question whether the machinery was covered by the mortgage on the realty or was personal, property. The court traced the history of the law of fixtures and said:
 

 “The great difficulty which has always perplexed investigation upon this subject, has been the want of some certain, settled and unvarying standard, by which it could be determined what amounts to a fixture, or what connection with the land will deprive a chattel of its peculiar legal qualities as such, and make it accessory to the freehold.”
 

 The court continued with a narration of three different criteria which have guided the courts in determining whether property is a fixture or chattel; namely, the firmness of affixion; the adaptation of the article to the uses or purposes to which the realty is appropriated, however slight its physical connection with it; and the intention of the party making the annexation.
 

 Although, at the time of the
 
 Teaff case,
 
 syllabi did not state the law determined by the cases, as syllabi do at the present time, nevertheless the syllabus in the
 
 Teaff case
 
 summarized the opinion of the court and reads in.part as follows:
 

 
 *95
 
 “A fixture is an article which was a chattel, but which, by being affixed to the realty, became accessory to it, and parcel of it.
 

 “The true criterion of a fixture, is the united application of the following requisites, to wit: 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated. 3d. The intention of the party making the annexation, to make a permanent accession to the freehold.
 

 “The criterion of a fixture applicable to machinery in a mill or manufactory, is not different from that which applies to articles affixed to the freehold in any other situation.
 

 “A mill or manufactory, including all its essential parts, may unite in the same business, and for producing a common result, portions of real estate, with articles of personal property, retaining all the essential qualities of chattels.
 

 “The machinery in a woolen factory, consisting of' carding machines, spinning machines, power looms, etc., connected with the motive power of the steam engine by bands and straps, but in no wise attached to the building in which used, except by cleats, or other means to confine them to their proper places for use, and subject to removal whenever convenience or business may require without injury, are not fixtures, but chattel property.”
 

 . In the
 
 Teaff case,
 
 the court said in substance that the same article may be a fixture under certain circumstances and a chattel under others, and that there could be such a difference in the same article as between vendor and vendee, landlord and tenant, heir and executor, or a tenant for life and remainderman.
 

 The court decided in the
 
 Teaff case
 
 that the machinery and implements in the woolen mill, useful and even essential for the business carried on, but which
 
 *96
 
 were attached to the building only by cleats and other means to confine them to their proper places, were chattel property, whereas the steam engine and boilers adapted to the production of motive power and firmly affixed to the structure, and clearly intended to be per-manent, were fixtures.
 

 After the decision in the
 
 Teaff case,
 
 it was a natural sequence
 
 for
 
 this court to hold that in the case of a manufactory the machinery which supplies the motive power, as contradistinguished from that propelled by it, is generally held to be a fixture where it is permanently annexed to foundations resting upon the freehold.
 
 Case Mfg. Co.
 
 v.
 
 Garven,
 
 45 Ohio St., 289, 13 N. E., 493.
 

 In the opinion in the
 
 Garven case,
 
 Judge Minshail said at page 299:
 

 “The machinery furnishing the motive power is generally more closely annexed to the freehold, and of a more permanent nature,
 
 as the power furnished by it may be adapted to the propulsion of the machinery of a variety of mills without any substantial change in the motive power itself
 
 or in the building other than by substituting one kind of machinery for another; whilst the machinery that is propelled, has more of the general character of perspnalty, is not as a rule so closely annexed to the freehold, and may be removed, and frequently is, from one mill to-another, as any other article of personalty; and is more properly
 
 ‘accessory to the business’ carried on upon the realty than to the realty
 
 itself.” (Italics ours.)
 

 It is obvious that a primary distinction between a fixture and a chattel, as expounded in the
 
 Garven
 
 case, is that a fixture is accessory to the use of the real estate as such, whereas a chattel is accessory to the particular business conducted on the real estate.
 

 From this reasoning there followed another logical sequence and that is that a steam boiler plant firmly affixed to the land or the foundations constructed there
 
 *97
 
 on, but which is specially designed and constructed to produce steam for the particular business in which it is used, and not useable to produce power for ordinary manufacturing business, is accessory to the business in which it is used rather than to the realty upon which it is located.
 
 Standard Oil Co.
 
 v.
 
 Zangerle, Aud.,
 
 144 Ohio St., 523, 60 N. E. (2d), 59.
 

 In
 
 Zangerle, Aud.,
 
 v.
 
 Standard Oil Co. of Ohio,
 
 144 Ohio St., 506, 60 N. E. (2d), 52, paragraph four of the syllabus reads:
 

 “The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the' business is conducted. ’ ’
 

 In
 
 Zangerle, Aud.,
 
 v.
 
 Republic Steel Corp.,
 
 144 Ohio St., 529, 60 N. E. (2d), 170, paragraph seven of the syllabus reads:
 

 “The general principle to be kept in view in determining whether what was once a -chattel has become a fixture is the distinction between the business which is carried on in or upon the premises, and the premises. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business which may be of a temporary duration, become subservient to the realty and acquire and retain its legal character.”
 

 Applying the principles, which have been enunciated by this court, to the items in the present case, what is the logical result?
 

 The main items for our consideration are the kilns. The other items are accessory to the kilns, were de
 
 *98
 
 signed for their special use,, are mostly removable by the unfastening of bolts, and have the characteristics of chattels generally'.
 

 The kilns are specially designed, not only for the ceramic-business but for the specific and particular kind of ceramic business carried on in the. plants in which they are located. They are even more peculiar to the business which they serve than is the ponderous equipment held to be personal property for tax purposes in the three
 
 Zangerle cases, supra,
 
 and by all the tests applied in those cases the property in the present cases must be deemed personal for taxation purposes.
 

 In addition, Section 2 of Article XII of the Constitution of Ohio, as it was amended in 1931, requires real estate and the improvements thereon to be taxed uniformly at their true value, leaving to the General Assembly the power to classify personal property. In accordance therewith, the General Assembly has in its classification given, a lower rate to the machinery and implements of manufacturing concerns than it has placed on other personal property. This shows an obvious intention to favor manufacturing concerns, in the taxation of their property, in order to make Ohio an attractive state for new business which, in the long run, will result in more taxes because of more property, as well as furnishing greater opportunities in this state for both business and labor.
 

 Admittedly, the application of the principles of law with reference to fixtures or improvements upon real estate is difficult and depends upon the particular circumstances of each case, but, where there is any doubt as to whether property is real or personal, the doubt must be. resolved in favor of the citizen or the property to be taxed. The general intent to resolve any doubt in favor of the taxpayer may be fairly established by the specific intent to construe ambiguous taxing statutes in favor of the taxpayer.
 

 
 *99
 
 The third paragraph of the syllabus of
 
 Clark Restaurant Co.
 
 v.
 
 Evatt, Tax Commr.,
 
 146 Ohio St., 86, 64 N. E. (2d), 113, is as follows:
 

 “In the construction and application of taxing statutes, their provisions cannot be extended by implication beyond the clear import of the language used; nor can their operation be so enlarged as to embrace subjects not specifically enumerated. A strict construction is required and any doubt must be resolved in favor of the taxpayer upon whom, or the property upon which, the burden is sought to be imposed.
 
 (Watson, Jr., Exr.,
 
 v.
 
 Tax Commission,
 
 135 Ohio St., 377, approved and followed.)”
 

 It is true that in the
 
 Zangerle cases, supra,
 
 three members of the court dissented. That is one strong indication of ambiguity or doubt.
 

 It must be remembered that in declaring the law, a court of last resort is not only finally deciding cases but is setting forth rules which are guides for all the citizens, within its jurisdiction, in their work, their business and their living together; and that the citizens arrange their lives and affairs in accordance with those rules and guides. Although a court should never hesitate to overrule a former declaration if it clearly and certainly appears that wrong principles of law were applied or circumstances have arisen which require a different application, it should never be said of a court what Justice Roberts said concerning the court on which he sat, that its action in overruling recent cases “tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and trip only.”
 
 Smith
 
 v.
 
 Allwright,
 
 321 U. S., 649, 669, 88 L. Ed., 987, 64 S. Ct., 757, 151 A. L. R., 1110.
 

 In the present cases, the Tax Commissioner has, as permitted by Section 5624-8, General Code, filed a brief in which it is urged that taxes for 1944 became liens on the day preceding the second Monday in April 1944;
 
 *100
 
 that December 20, 1944, was the last day for the payment of the taxes for the first half of that year, without penalty; that extensions of time for the collection of taxes can be made by only the county commissioners or the Board of Tax Appeals; and that complaints against valuations or assessments may be filed on or before the time limited for payment of taxes for the first half year or at any time during which taxes are received by a county treasurer without penalty for the first half year.
 

 Since the complaints in these two cases were not • filed until March 21, 1945, the claim is made that such filings were too late, as far as the 1944 taxes were concerned, and, therefore, that both the Board of Tax Appeals and the Board of Revision of Muskingum county were without jurisdiction to consider these cases. This point was not raised by the auditor of Muskingum county or. the' Board of Revision, who must have known all the facts, and, although it is true that in most instances a question of jurisdiction, other than that of the person, may be raised at any time, from aught that appears in the record, the 1944 taxes for the first half of the year were being received by the county treasurer of Muskingum county, without penalty, on March 21, 1945.
 

 The Tax Commissioner likewise raises the point as to the Tax Commissioner’s rule number 14, adopted on July 9, 1939, which classifies all continuous tunxiel kilns, including flues, ducts, breeching, stacks and permanent tracks, as real property. The Tax Commissioner is empowered under Section 1464-3, paragraph 13, General Code, to make rules for the administration of taxing statutes. Under Sections 5623 and 5624, General Code, these rules are binding upon,
 
 among
 
 others, the taxing officials of the state. However, in the case of
 
 Zangerle, Aud.,
 
 v.
 
 Evatt, Tax Commr.,
 
 139 Ohio St., 563, this court held in paragraph five of the syllabus:
 

 
 *101
 
 ‘ ' Courts will not aid in. making or revising rules of administrative officers, boards or commissions, being confined to deciding whether such rules are reasonable and lawful as applied to the facts of a particular justiciable case.”
 

 It is obvious that a rule of the Tax Commissioner cannot have the binding force of law on the decision in the present cases.
 

 In the supplemental brief of the appellants, and in the argument of these cases in this court, it is urged that there was no constitutional question involved; 'that Section 5322, General Code, provides that “the terms 'real property’ and 'land’ as so used, include not only land itself, * * * but also, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind thereon, and all rights and privileges belonging or appertaining thereto.” It is further urged that the kilns in the present cases are either buildings or structures, or both, and are not otherwise specified.
 

 The argument proceeds further to the effect that Sections 5385 and 5386, General Code, require a manufacturer to include in his listing of personal property for taxation “all engines and machinery of every description used, or designed to be used, in refining or manufacturing, and all tools and implements of every kind used, or designed to be used, for such purpose, owned or used by such manufacturer.”
 

 It is argued further that kilns are neither engines, tools, nor implements, and that, therefore, since tunnel kilns are structures on land, not otherwise specified, they are to be included with land for the purposes of taxation. The argument made is a plausible one .and would be most persuasive except for a legal proposition which is axiomatic, and that is that the Constitution of Ohio is paramount over all enactments of the General Assembly, and that the enactments must be
 
 *102
 
 reconciled, if possible, with constitutional provisions,, but if that is impossible the enactment and not the constitutional provision must fall.
 

 The kilns in these cases are peculiarly adapted to the-businesses they serve. They can be removed and taken to other locations. Similar kilns are advertised for sale and removal. The kilns in these cases are personal property, and are implements used in manufacturing, within the meaning of . Section 5388, General' Code, which requires the listing and assessing of such implements,' etc., at 50 per cent of their true value." Therefore, within the meaning of Section 5322, General Code, which provides that, unless otherwise specified, all structures are real property, the kilns in these-cases, being implements in connection with ceramic-manufacturing, are
 
 otherwise specified. .
 

 In the case of
 
 Fortman
 
 v. Goepper, 14 Ohio St., 558, one of the questions was whether a large brewing kettle was a fixture or a chattel. It was a ponderous-structure in the cellar, set over a furnace and surrounded by brickwork extending to the floor above the cellar. The kettle was put in position in separate pieces and would have had to have been taken apart to remove it.
 

 Judge White said, in that case, on page 566: -
 

 “It
 
 could not be said to have become part of the-realty as an incident to the wall, by which it was surrounded; for, rather, it was the principal, as an
 
 implement
 
 in the business, and the wall was constructed for the more convenient use of it as a chattel.” (Italics ours.)
 

 The decisions of the Board of Tax Appeals in these cases are not unreasonable and unlawful and they are affirmed.
 

 Decisions affirmed.
 

 Turner, Matthias, Hart and Sohngen, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.