BROWN ET AL. *v.* DuBOIS ET AL.

(No. 86 CVF 7476—Decided February 25, 1988.)

Marion Municipal Court.

*Keith Lange,* for plaintiffs.
*Thomas A. Frericks,* for defendants.

ROGERS, J. This matter came before the court for trial on the complaint of the plaintiffs-landlords alleging that the defendants-tenants removed certain property from the leasehold upon termination of their lease. Plaintiffs allege that the items removed were fixtures and had become a part of the real estate and that the defendants had no right to remove them. The defendants in response denied that their removal of the property was improper.

Upon trial, the evidence demonstrated that the tenants had installed approximately five rooms of wall-to-wall carpet and certain track lighting appliances. It is uncontested that the defendants conducted a retail business in the premises and that the track lighting was used to highlight certain items on display for sale. Further, it is uncontested that the written lease between the parties was executed approximately on October 16, 1981, for a term of five years ending October 31, 1986, that the defendants vacated the

property on or before October 31, 1986, and that the items in question were removed prior to that date. Also, the lease contains a specific provision granting the lessees the right to remove "trade fixtures."

The issue before the court is whether the track lighting appliances and wall-to-wall carpet are, in fact, fixtures or whether they have retained their identity as chattels or personalty.

"The term fixture itself, although always applied to articles of the nature of personal property which have been affixed to land, has been used with different significations, until it has become a term of ambiguous meaning. And this ambiguity which has attended the use of this word in various adjudications, and by different writers, has been productive of much of the uncertainty, which has perplexed investigations falling under this branch of the law. The term fixture has been used by various writers and in numerous reported decisions, as denoting personal chattels annexed to land which may be severed and removed against the will of the owner of the freehold, by the party who has annexed them, or his personal representatives. * * * [Citations omitted.]

"There may be some propriety in this definition of the term when confined in its application to the relation of landlord and tenant, or tenant for life or years and remainderman or reversioner, to which several of the elementary authors, have chiefly confined their attention. But it does not appear to express the accurate meaning of the term in its general application. An article attached to the realty but which is removable against the will of the owner of the land, has not lost the nature and incidents of chattel property. It is still movable property, passes to the executor, and not to the heir, on the death of the owner, and may be taken on execution and sold as other chattels, etc. A removable fixture as a term of general application, is a solecism — a contradiction in words. There does not appear to be any necessity or propriety in classifying movable articles, which may be for temporary purposes somewhat attached to the land under any general denomination distinguishing them from other chattel property. * * *

"It is an ancient maxim of the law, that whatever becomes fixed to the realty, thereby becomes accessory to the freehold, and partakes of all its legal incidents and properties, and cannot be severed and removed without the consent of the owner. *Qui[c]quid plantatur, solo, solo cedit*, is the language of antiquity in which the maxim has been expressed. The term fixture, in its ordinary signification, is expressive of the act of annexation, and denotes the change which has occurred in the nature and the legal incidents of the property; and it appears to be not only appropriate but necessary to distinguish this class of property from moveable property, possessing the nature and incidents of chattels. It is in this sense, that the term is used, in far the greater part of the adjudicated cases * * *. [Citations omitted.] It is said that this rule has been greatly relaxed by exceptions to it, established in favor of trade, and also in favor of the tenant, as between landlord and tenant. And the attempt to establish the whole doctrine of fixtures upon these exceptions to the general rule, has occasioned much confusion and misunderstanding on this subject." *Teaff* v. *Hewitt* (1853), 1 Ohio St. 511, at 524-525.

While the term "trade fixtures" may be a misnomer, precedent and usage have given us some standards by which to define the term.

" 'Trade fixtures' are those which the tenant places on demised premises to promote the purpose of his occupation, and which he may remove during his term. In dealing with trade fix-

tures, the distinction to be observed is between the business which is carried on upon the premises, and the premises themselves. The former is personal in nature, and articles that are merely accessory to the business, and have been put upon the premises for this purpose, and not as accessions to the real estate, retain the personal character of the principal to which they belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on there, and not peculiarly for the benefit of the present business, which may be of temporary duration, become subservient to the realty and acquire its legal character." 50 Ohio Jurisprudence 3d (1984) 119-120, Fixtures, Section 21 (footnotes omitted).

It is clear to the court that the track lighting appliances installed by the defendants were uniquely adapted to the purposes of their business and fit squarely within the usual connotation of the term "trade fixtures." At the time of the execution of the lease, the parties clearly evidenced their intention to allow the removal of such items and the defendants cannot be held liable for exercising their rights under the lease.

However, the issue of the right to remove carpet is not as clearly defined nor as easily resolved. Wall-to-wall carpeting has been held to be a fixture where it was cut to fit a dwelling and nailed or stapled into place. *Merchants & Mechanics Fed. Sav. & Loan Assn. of Springfield* v. *Herald* (1964), 120 Ohio App. 115, 28 O.O. 2d 302, 201 N.E. 2d 237; *Exchange Leasing Corp.* v. *Finster N. Aegen, Inc.* (1966), 7 Ohio App. 2d 11, 36 O.O. 2d 63, 218 N.E. 2d 633. Carpet may be said to be equally adaptable to either the unique purposes of the tenant, or to the structure in general regardless of the use to which it is put, thereby suggesting its

installation renders it a fixture. However, even the above-cited cases suggest that the court should inquire further and consider additional factors such as the intention of the tenant and the possibility of windfall gain versus unfair deprivation.

The general rule has been stated that a tenant retains the right to remove articles which the tenant places in or on the leasehold during the term of the lease, which items were so placed to enhance the tenant's use or enjoyment of the premises. This rule applies not only to chattels which have retained their character as personalty, but also to chattels which would be classed as fixtures if emplaced by the owner of the leasehold property. While it is widely recognized that this rule applies to chattels installed for trade purposes, the rule also applies to articles which have been installed for purposes which are ornamental or merely enhanced comfort and convenience. *Teaff, supra.* Early cases established this rule based upon public policy for the encouragement of trade and the most profitable use of the leased premises. However, more recent decisions imply a contract for removal of such chattels under the doctrine of unjust enrichment and concern themselves with the intention of the parties as affected by the unique relationship of landlord and tenant and inferred from all other circumstances in the case. 50 Ohio Jurisprudence 3d (1984) 109, Fixtures, Section 14.

The landmark case of *Teaff, supra,* is still the foundation of the law in the state of Ohio, and in the country generally, as to when a chattel personal becomes a chattel real or a fixture. The *Teaff* court set forth the following standards at 529-530:

"* * * the united application of the following requisites will be found the safest criterion of a fixture.

"1st. Actual annexation to the

realty, or something appurtenant thereto.

"2d. Appropriation to the use or purpose of that part of the realty with which it is connected.

"3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold — this intention being inferred from the *nature* of the article affixed, the *relation* and *situation* of *the party* making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made." (Emphasis sic.)

This general rule has been reviewed, examined, reaffirmed and refined by the Ohio Supreme Court. "We reaffirm that such a determination must be made in light of the particular facts of each case, taking into account such facts as the nature of the property; the manner in which it is annexed to the realty; the purpose for which annexation is made; the intention of the annexing party to make the property a part of the realty and dedicate it irrevocably to the realty for a particular use; the degree of difficulty and the extent of any economic loss involved in thereafter removing it from the realty; and the damage to the severed property which removal would cause." *Masheter* v. *Boehm* (1974), 37 Ohio St. 2d 68, 77, 66 O.O. 2d 183, 188, 307 N.E. 2d 533, 540. The *Masheter* court indicated a desire to define a "proper rule of law, which provides that degree of flexibility and accommodation to circumstances necessary to ensure that * * * [the parties] will be dealt with fairly, with neither enjoying a windfall gain nor suffering unfair deprivation." *Masheter, supra,* at 76-77, 66 O.O. 2d at 188, 307 N.E. 2d at 540.

Considering the evidence in the case at bar in light of the *Teaff* and *Masheter* standards, the court makes the following findings of fact: (1) that the carpeting at issue was securely attached to the realty by means of "tackless strips" which were nailed to the floor; (2) for the purpose of enhancing the appearance and comfort of the leased property; (3) there seemed to be little difficulty removing the carpet; (4) the plaintiffs failed to demonstrate any actual economic loss resulting from the removal although the removal caused some damage to the floors of the building; (5) that retention of the carpet by the lessors would allow them only a slight gain due to the age and use of the carpet; (6) and it would also appear from the evidence that neither party contemplated the retail establishment opening its doors to the public without some renovation, repair or covering of the original floors. Since the condition of the floors and the building in general was obvious, the court can reasonably infer from the parties' negotiations that the tenants intended to improve the premises in general and the floor in particular. This conclusion is further supported by the fact that plaintiffs agreed to expend up to $1,000 for repairs, and so stipulated in the written lease.

Consequently, the court has arrived at the following conclusions: (1) that the carpeting at issue was of a nature properly described as a chattel at time of purchase; (2) that it was susceptible of either continued existence as personalty, or of becoming a permanent fixture; (3) that the tenants intended the carpet as a permanent improvement to the property; (4) that lessors will receive no windfall because the gain was anticipated; (5) that upon installation said carpet became a fixture and, therefore, was not subject to removal by the tenants.

It remains then for the court to ascertain the damages suffered by the plaintiffs by the wrongful removal of the carpet. The complaint of the plain-

tiffs is couched in terms of conversion and the measure of damages "in an action for conversion is the value of the property at the time and place of the taking or conversion by the wrongdoer * * *." 18 Ohio Jurisprudence 3d (1980) 526, Conversion and Replevin, Section 54 (footnotes omitted). Generally, where a market value is ascertainable it may be used as a standard for damages. Where no sufficient market exists on which to establish a value, the measure of damages for the conversion becomes the reasonable value of the property at the time of the conversion.

This court has received evidence of two measures of damage. The first was the plaintiffs' own opinion as to the value of the entire leasehold before and after the conversion resulting in a diminution in value of $2,000.

The second measure offered to the court as evidence was testimony of the plaintiffs' witness, a professional carpet retailer and installer. This testimony related to replacement carpet including pad, labor and taxes for a total of $1,859.77. This estimate appeared to be based on similar goods and the witness further testified that reasonable life expectancy of the carpet removed would have been ten years.

While this court would have preferred to use as a starting point for determining damages the cost of the carpet to the tenant when installed in 1981, the court feels it is not unreasonable to consider the replacement value. After allowing a reasonable amount for inflation and five years' depreciation of carpet, the court estimates the value of the converted carpet at the time of removal in October 1986 as $925. Although the court recognizes that the method of determination used herein is not perfect, the court feels that it is as reasonable and as accurate a result as would have been obtained by submitting the same facts to a jury.

It is, therefore, ordered that judgment be entered for the plaintiffs against the defendants in the sum of $925.

*Judgment accordingly.*