**METROPOLITAN CABLEVISION, INC., et al., Appellees,**

v.

**COX CABLE CLEVELAND AREA, Appellant.**

[Cite as *Metro. Cablevision, Inc. v. Cox Cable Cleveland Area* (1992), 78 Ohio App.3d 273.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59883.

Decided Feb. 10, 1992.

*McCarthy, Lebit, Crystal & Haiman* and *Charles P. Royer*, for appellees.

*Cassidy & Mottl Co.* and *Donald L. Reiman*, for appellant.

---

MATIA, Chief Justice.

This appeal arises out of the judgment of the Cuyahoga County Court of Common Pleas which found that the cable wiring installed in a subscriber's home by a cable television company was a fixture. Appellant claims error, and assigns this issue for our review. We affirm the decision of the trial court.

### STATEMENT OF THE FACTS

Defendant-appellant Cox Cable Television Company ("Cox") is a cable television company with a cable franchise in the city of Parma, Ohio, as well as other communities in Cuyahoga County.

Plaintiff-appellee Metropolitan Cablevision, Inc., d.b.a. MetroTen Cablevision ("MetroTen"), is a cable television company which provides "wireless" cable to the city of Cleveland, and elsewhere in the northeast Ohio area, including Parma, through a technology known as Multichannel Multipoint Distribution System. Unlike other cable companies, MetroTen transmits signals through the air to an antenna located on the subscriber's home. MetroTen and Cox compete for cable customers in Parma.

When Cox installs service in a new subscriber's home, it runs a wire from the cable pole to the house, and through a drilled hole in the house to the television set. If the television is not near the wall, Cox uses clips to attach the wiring to the baseboard. A grounding device is also used and attached with screws to the joists in the basement. Cox runs wiring along the interior walls if necessary. When a subscriber cancels his service, Cox is under no obligation to remove the wiring unless the homeowner requests its removal in writing. Parma Ordinances 717.22.

If a former Cox Cable subscriber switches to MetroTen, MetroTen will use internal wiring previously installed by Cox to provide MetroTen's service to that subscriber. MetroTen installs its antenna and runs wiring from its antenna to the ground-block left by Cox. MetroTen then uses the wiring left by Cox from the ground-block to the subscriber's television set.

Plaintiff-appellee Dawn Mueller is a homeowner in Parma. After cancelling her Cox subscription, she refused to permit Cox's removal of her internal wiring. Both Mueller and MetroTen allege that the internal wiring left in the homes of former subscribers by Cox is a fixture. Cox alleges that the

contract between Cox and the homeowner expressly asserts that internal wiring remains the property of Cox and never becomes a fixture.

## STATEMENT OF THE CASE

Appellee MetroTen filed for a declaratory judgment and injunctive relief against Cox and Parma after it learned that Parma, by and through its Law Director, had found that the internal wiring left by Cox in the homes of former subscribers was not a fixture and therefore MetroTen had no right to use that wiring unless Cox gave express permission.

In its complaint for declaratory judgment, MetroTen prayed that the court find either that the internal wiring was a fixture or that Cox had abandoned the wiring. Cox counterclaimed for the reasonable value of the use of its equipment. Before the hearing, MetroTen voluntarily dismissed Parma from the case.

After the initial hearing the trial court made findings of fact and conclusions of law. The trial court held both that the internal wiring was a fixture and that unless Cox removed the internal wiring within a reasonable time after a subscriber cancelled his service, Cox abandoned that wiring. No decision was made on Cox's counterclaim.

Based upon the holding that Cox abandons the internal wiring unless removed within a reasonable time after the subscriber cancels, Cox began removing the internal wiring from the homes of subscribers who cancelled. The trial court, realizing its earlier decision needed clarification, set the matter for another hearing. MetroTen filed an amended complaint that included a new party, appellee Dawn Mueller, who asked the court to enjoin Cox from removing the wiring from her home after she cancelled her Cox cable service.

As a result of the second hearing, the trial court found that the internal wiring was a fixture and enjoined Cox from prosecuting either civil or criminal actions against MetroTen for its use of the internal wiring and from prosecuting Dawn Mueller based on her refusal to allow Cox to remove the internal wiring from her home. The court did not find that Cox had abandoned the wiring. The court also dismissed Cox's counterclaim.

The trial court journalized its judgment entry on May 4, 1990. On May 25, 1990 Cox filed a timely notice of appeal from that judgment.

## ASSIGNMENT OF ERROR

"The trial court erred in finding that internal wiring installed in a home by a cable company is a fixture which becomes the property of the homeowner."

Appellant argues in its sole assignment of error that the trial court erred in finding that internal wiring installed in a home by a cable company is a fixture. Specifically, appellant argues that internal wiring remains the property of the cable company.

This assignment of error is not well taken.

## ISSUE: WHETHER CABLE WIRING INSTALLED IN A SUBSCRIBER'S HOME BECOMES A FIXTURE

In determining whether articles annexed to the leasehold by the tenant have become fixtures, the trier of fact must consider the nature of the property, the manner of annexation, the purpose of annexation, the intention of the annexing party, the difficulty of removal, and the damage to the severed property which removal would cause. *Brown v. DuBois* (1988), 40 Ohio Misc.2d 18, 532 N.E.2d 223.

In the cause *sub judice*, the court is not making a determination regarding fixtures placed in a leasehold by the tenant; however, the holding in *Brown* reaffirms the general rule of law in Ohio since 1853 that a fixture to realty brings into issue not ownership but, rather, whether the fixture becomes a permanent part of the realty and thus capable of passing with the freehold or leasehold estate.

"It is an ancient maxim of the law, that whatever becomes fixed to the realty, thereby becomes accessory to the freehold, and partakes of all its legal incidents and properties, and cannot be severed and removed without the consent of the owner. *Qui[c]quid plantatur, solo, solo cedit,* is the language of antiquity in which the maxim has been expressed. The term fixture, in its ordinary signification, is expressive of the act of annexation, and denotes the change which has occurred in the nature and the legal incidents of the property; and it appears to be not only appropriate but necessary to distinguish this class of property from moveable property, possessing the nature and incidents of chattels. It is in this sense, that the term is used, in far the greater part of the adjudicated cases * * *. It is said that this rule has been greatly relaxed by exceptions to it, established in favor of trade, and also in favor of the tenant, as between landlord and tenant. And the attempt to establish the whole doctrine of fixtures upon these exceptions to the general rule, has occasioned much confusion and misunderstanding on this subject." (Citations omitted.) *Teaff v. Hewitt* (1853), 1 Ohio St. 511, at 525.

This general rule has been reviewed, examined, reaffirmed and refined by the Ohio Supreme Court:

"We reaffirm that such a determination must be made in light of the particular facts of each case, taking into account such facts as the nature of

the property; the manner in which it is annexed to the realty; the purpose for which annexation is made; the intention of the annexing party to make the property a part of the realty and dedicate it irrevocably to the realty for a particular use; the degree of difficulty and the extent of any economic loss involved in thereafter removing it from the realty; and the damage to the severed property which removal would cause." *Masheter v. Boehm* (1974), 37 Ohio St.2d 68, 77, 66 O.O.2d 183, 188, 307 N.E.2d 533, 540.

▉ The *Masheter* court indicated a desire to define a "proper rule of law, which provides that degree of flexibility and accommodation to circumstances necessary to ensure that * * * [the parties] will be dealt with fairly, with neither enjoying a windfall gain nor suffering unfair deprivation." *Id.* at 76–77, 66 O.O.2d at 188, 307 N.E.2d at 540. See, *e.g., Zangerle v. Republic Steel Corp.* (1945), 144 Ohio St. 529, 30 O.O. 160, 60 N.E.2d 170; *Roseville Pottery, Inc. v. Muskingum County Bd. of Revision* (1948), 149 Ohio St. 89, 36 O.O. 440, 77 N.E.2d 608; *Gregory v. Helman* (App.1933) 14 Ohio Law Abs. 193; *Novak v. Jicha* (C.P.1935), 19 Ohio Law Abs. 105, 3 O.O. 134, 1 Ohio Supp. 168; *Zangerle v. Evatt* (BTA 1941), 22 O.O. 344, 7 Ohio Supp. 106, appeal dismissed (1942), 139 Ohio St. 563, 23 O.O. 52, 41 N.E.2d 369.

In reviewing the cause herein, and applying the standards enunciated by precedent, this court finds that the trial court properly found that the cable wiring placed in the subscriber's home by Cox was a fixture and, thus, part of the realty by annexation.

The wiring supplied by Cox is stapled, screwed and clamped to the walls, floorboards, basement joists, and exterior and interior walls of the subscriber's home. The facts indicate that Cox is efficient and as minimally intrusive into the integrity of the structure as possible; however, holes are drilled into the exterior wall of the subscriber's home to permit ingress of the cable service to the subscriber's television. Wires are annexed to the floorboards of the home if necessary. A ground wire is attached, preferably to the cold water line in the basement. Most important, notwithstanding Cox's contract with the subscriber, prior to MetroTen's complaint the cable wiring was customarily left in the home after the subscriber terminated Cox's cable service.

Cox's own testimony revealed that the wire was intentionally left in the subscriber's home due to the high incidence of repeat service either by resubscription or by a new subscription by new tenants or homeowners. Cox further testified that removing the cable cost more than it was worth, and that although the wiring could be removed without causing a great amount of damage, some damage could result from removal of the cable wires.

We find conclusively then that the facts of the cable wiring fit squarely within the rules for determining whether moveable property becomes so attached to the realty as to become a fixture and therefore a part of the real estate. *Teaff; Masheter; Brown, supra.* Accordingly, we find that the trial court properly determined that the cable wiring is a fixture.

## *ISSUE:* WHETHER COX CABLE CONTRACT BETWEEN COX AND SUBSCRIBER CIRCUMVENTS FIXTURE LAW

■ Cox relies also on the contract between it and the subscriber to counter the fixture argument. The contract states that the subscriber will "allow Cox reasonable access to the customer's premises for the purpose of * * * removal of cable equipment to customer's premises." The front of the contract reads: "Important equipment agreement. I understand and agree that the equipment installed by Cox Cable Cleveland Area remain their property and is to be returned in good working condition when the cable service is terminated."

Cox argues that the trial court's ruling contradicts the intent of the contract between the subscriber and Cox. We find, however, that the equipment that the contract refers to is the moveable components of the cable service, *i.e.,* the cable box and the remote control and any other equipment that is easily removable because it is attached to the realty only by a connection here or there. Therefore, the trial court's judgment does not contradict the intent of the contract between Cox and the subscriber.

Accordingly, finding no error, and for the foregoing reasons, we affirm the judgment of the trial court.

*Judgment affirmed.*

SPELLACY and HARPER, JJ., concur.