[Cite as *Found. Medici v. Butler Inst. of Am. Art*, 2022-Ohio-2923.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

FOUNDATION MEDICI,

        Plaintiff-Appellant,

  - v -

THE BUTLER INSTITUTE OF
AMERICAN ART,

        Defendant-Appellee.

CASE NO. 2020-T-0042

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2019 CV 01799

## O P I N I O N

Decided: August 22, 2022
Judgment: Affirmed

*Michael D. Rossi*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, Ohio 44482, and *Thomas C. Nader*, Nader & Nader, 7011 East Market Street, Warren, Ohio 44484 (For Plaintiff-Appellant).

*Thomas J. Wilson*, Comstock, Springer & Wilson, Co., LPA, 100 Federal Plaza East, Suite 926, Youngstown, Ohio 44503 (For Defendant-Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Foundation Medici ("Medici"), appeals the trial court's decision awarding summary judgment in favor of appellee, The Butler Institute of American Art ("Butler"). We affirm.

{¶2} In May 1995, Medici and Butler entered into an agreement for the operation of a Butler museum branch in Trumbull County on real estate owned by Medici. The parties also entered into a written lease in May 1995, in which Butler leased property in

Trumbull County from Medici for 99 years to operate the Trumbull County branch. After five years, the lease permitted either party to terminate the agreement.

{¶3} In June 2019, Medici sent Butler notice of intent to cancel the lease agreement, and in response, Butler advised Medici of its intent to remove its artwork.

{¶4} Medici filed suit in November 2019, seeking temporary and permanent injunctions enjoining Butler from removing four pieces of art that it alleges were to remain at Medici. The parties narrowed Medici's claim down to one piece, the untitled Pierre Soulages terra-cotta mural, which has been displayed at the Trumbull County branch/Medici building since Butler acquired it.

{¶5} Medici filed an amended complaint in January 2020 and sought declaratory judgment that the mural is a permanent fixture to the building; that the mural was an improvement and endowment; and that the mural is held in charitable trust, owned by Butler as trustee to be displayed at the Medici building.

{¶6} Butler filed an answer and counterclaim contending that it paid $250,000 to construct an addition at the Medici, and as a result of Medici's premature cancellation of the parties' 99-year lease, Medici is unjustly enriched by its retention of the addition, which Butler can no longer use. Medici moved to dismiss the counterclaim.

{¶7} Thereafter, the trial court held an evidentiary hearing on the issue of "the ownership and possession" of the mural. At the hearing, the trial court stated that the hearing was being held to "sort out certain issues of fact that we haven't received stipulations on, and we're going to go through the agreed-upon exhibits here. After this, the parties will have an opportunity to brief this and file cross motions of summary judgment on the legal issues."

2

{¶8}   After the hearing, the parties filed motions for summary judgment.  Before ruling on the competing summary judgment motions, the trial court overruled Medici's motion to dismiss Butler's counterclaim.  Thereafter, Medici moved for judgment on the pleadings as to Butler's counterclaim raising the same argument.

{¶9}   The trial court granted Butler's motion for summary judgment and overruled Medici's motions for summary judgment and for judgment on the pleadings.  The court did not, affirmatively rule on the counterclaim, which remains pending, but it did find no just cause for delay.

{¶10}  Medici's sole assigned error asserts:

{¶11}  "The trial court erred in denying appellant, Foundation Medici's Motion to Dismiss Counterclaim; in denying Medici's Motion for Judgment on the Pleadings; in denying Medici's Motion for Summary Judgment; and in granting Appellee, Butler Institute of American Art's Motion for Summary Judgment on Medici's 'fixture' and 'declaration of charitable trust' claims."

{¶12}  Medici's assigned error consists of four arguments.  First, it argues the trial court erred as a matter of law by overruling its motion to dismiss and motion for judgment on the pleadings regarding Butler's counterclaim for unjust enrichment.  Medici claims that a cause of action for unjust enrichment cannot stand when it arises from a written agreement unless a companion claim is filed for fraud, bad faith, or illegality in the contract's performance.

{¶13}  As stated, however, Medici appeals from the trial court's decision awarding Butler summary judgment, which resolves Medici's claims against Butler but does not determine the merits of Butler's counterclaim.  The judgment appealed only resolves and

3

disposes of Medici's causes of action and, by the court's inclusion of the "no just reason for delay" language from Civ.R. 54(B), prevents any further judgment on Medici's affirmative claims for relief against Butler. *Regional Imaging Consultants Corp. v. Computer Billing Servs., Inc.*, 7th Dist. Mahoning No. 00 CA 79, 2001 WL 1539261, *6 (Nov. 30, 2001).

{¶14} Although the trial court denied Medici's motion to dismiss and motion for judgment on the pleadings that sought dismissal of Butler's counterclaim, the trial court has not determined that Butler's counterclaim has merit or awarded it damages. Thus, we are without authority to address it. *Id.* (the judgment does not qualify as a final appealable order on the claim because it does not resolve the dispute); R.C. 2505.02(B). Because the court did not rule on the merits of Butler's counterclaim, its denial of the motion to dismiss and motion for judgment on the pleadings are not reviewable at this juncture. *See Kierland Crossing, LLC v. Ruth's Chris Steak House, Inc.*, 10th Dist. Franklin No. 11AP-627, 2011-Ohio-5626, ¶ 10.

{¶15} Accordingly, we do not address Medici's argument that the existence of a written agreement precludes a cause of action for unjust enrichment, and this aspect of its first assigned error is overruled.

{¶16} Medici's second argument under its sole assigned error claims that the trial court erred in its application of the three-part test governing whether an item is a fixture that has converted into realty and that the court incorrectly held that the terra-cotta mural is not a fixture.

{¶17} The trial court found that the mural, which was gifted to Butler, is not affixed to the building and that although Butler wanted the mural displayed at the Trumbull County

4

Case No. 2020-T-0042

branch, there is nothing evidencing that Butler intended for the mural to become part of the realty. The trial court concluded that "there is no evidence to support the characterization of the [mural] as a fixture according to the requirements."

**{¶18}** We review decisions awarding summary judgment de novo, meaning we review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C). *Brown v. Cty. Commrs. of Scioto Cty.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993); *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 191-192, 699 N.E.2d 534 (8th Dist.1997).

> Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

*Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, 101 N.E.3d 484, ¶ 6 (11th Dist.).

**{¶19}** Moreover, not every factual dispute precludes summary judgment; only disputes as to the material facts that may affect the outcome preclude summary judgment. *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶ 49 (4th Dist.), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶20}** Due to the particular procedure employed by the trial court here, to which the parties agreed, the trial court took testimony of several witnesses, and the parties relied on this evidence in support of their summary judgment motions. We review the

5

remaining issues pertaining to fixtures and charitable trusts mindful that courts may not weigh competing evidence or choose among reasonable inferences in ruling on summary judgment. *See Kalan v. Fox*, 187 Ohio App.3d 687, 2010-Ohio-2951, 933 N.E.2d 337, ¶ 44 (11th Dist.)

{¶21} Applying "the principles of law with reference to fixtures or improvements upon real estate is difficult and depends upon the particular circumstances of each case * * *." *Roseville Pottery, Inc. v. Cty. Bd. of Revision of Muskingum Cty.*, 149 Ohio St. 89, 98, 77 N.E.2d 608 (1948).

{¶22} The parties' lease states in pertinent parts:

> 7. Repairs * * * Lessee will deliver up and surrender to Lessor possession of the premises upon the expiration of this lease in as good condition and repair as the same shall be in the commencement of the lease, loss by fire and other casualty and ordinary wear, decay, depreciation and obsolescence only excepted. * * *
>
> 13. Alterations * * * All alterations and additions to the Premises shall be made in accordance with all applicable laws and shall remain for the benefit of the Lessor unless otherwise provided in such written consent to the Lessor[.] * * *
>
> 14. Trade Fixtures and Equipment. Lessee may, at the expiration of the term, remove all of Lessee's trade fixtures and equipment which can be removed without costly injury to or undue defacement of the Premises, provided all rents stipulated are paid in full and Lessee is not otherwise in default hereunder, and that any and all damage to the Premises resulting from or caused by such removal shall be promptly repaired at Lessee's expense.

{¶23} Here, the parties do not dispute that an addition was built with the expressed purpose of housing the mural, and this addition will remain with the real estate. Instead, their dispute focuses only on whether the terra-cotta mural itself constitutes a "fixture."

6

Case No. 2020-T-0042

**{¶24}** "'A fixture is an item of property which was a chattel but which has been so affixed to realty for a combined functional use that it has become a part and parcel of it.'" *State Farm Fire & Cas. Ins. Co. v. Kall*, 11th Dist. Geauga No. 98-G-2203, 2000 WL 522524, *3 (March 31, 2000), quoting *Holland Furnace Co. v. Trumbull S. & L.*, 135 Ohio St. 48, 19 N.E.2d 273 (1939), paragraph one of the syllabus.

**{¶25}** Unlike a fixture, a "trade fixture" is "[r]emovable personal property that a tenant attaches to leased land for business purposes, such as a display counter. • Despite its name, a trade fixture is not [usually] treated as a fixture — that is, as irremovable." FIXTURE, Black's Law Dictionary (11th ed. 2019).

> "'Trade fixtures' are those which the tenant places on demised premises to promote the purpose of his occupation, and which he may remove during his term. In dealing with trade fixtures, the distinction to be observed is between the business which is carried on upon the premises, and the premises themselves."

*Brown v. DuBois*, 40 Ohio Misc.2d 18, 19-20, 532 N.E.2d 223 (M.C.1988), quoting 50 Ohio Jurisprudence 3d, Fixtures, Section 21, at 119-120 (1984) (footnotes omitted).

**{¶26}** To determine whether an item of personal property has become a "fixture," we apply the three-part test formulated by the Supreme Court of Ohio in *Teaff v. Hewitt*, 1 Ohio St. 511, 511 (1853):

> The true criterion of a fixture is the united application of the following requisites, to wit: 1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Application to the use, or purpose, to which that part of the realty with which it is connected, is appropriated. 3d. The intention of the party making the annexation, to make a permanent accession to the freehold.

> **{¶27}** While *Teaff* set out the three legal requirements which must be met before a piece of chattel becomes a fixture, this general rule has been reviewed and refined by the Supreme

7

Court of Ohio over the years. For example, a [subsequent] decision by the court has delineated several factors which a court should use when making the above determination. Those factors include:

"[T]he nature of the property; the manner in which it is annexed to the realty; the purpose for which the annexation is made; the intention of the annexing party to make the property a part of the realty; the degree of difficulty and extent of any loss involved in removing the property from the realty; and the damage to the severed property which such removal would cause." *Masheter v. Boehm* (1974), 37 Ohio St.2d 68, 307 N.E.2d 533, paragraph two of the syllabus.

The *Masheter* court expressed an unmistakable desire to create a "proper rule of law, which provides that degree of flexibility and accommodation to circumstances necessary to ensure that * * * [the parties] will be dealt with fairly, with neither enjoying a windfall gain nor suffering unfair deprivation." *Id.* at 76-77, 307 N.E.2d 533. Accordingly, whether a particular item is real or personal property is a mixed question of law and fact. *G & L Investments v. Designer's Workshop, Inc.* (June 26, 1998), Lake App. No. 97-L-072, unreported, at 3, 1998 WL 553213.

*State Farm Fire & Cas. Ins. Co.*, 2000 WL 522524, at *3.

{¶28} The first *Teaff* element, physical attachment of the article to the realty or something appurtenant to it, has been deemed the least important of the factors, and even slight attachment may be sufficient to give chattel the character of a fixture. *Holland Furnace Co.,* 135 Ohio St. at 52-53.

{¶29} Here, the mural was affixed to a custom aluminum frame for display at the Trumbull County branch, but it is undisputed that it was hung with the capability of being removed. The disassembly and removal of the terra-cotta mural from its display will take approximately ten days and cause limited property damage to the custom frame, which Butler contends it will repair. And after its removal, the room that currently houses the mural can continue to be used to display other artwork. Assuming, without deciding, that

8

the mural was "affixed" to the real estate for purposes of the first *Teaff* factor, the mural

fails as a fixture under the two remaining *Teaff* factors. *See G & L Invests.* at *3 (The

*Teaff* "tests must all be met before a chattel is characterized as a fixture that becomes

accessory to the realty[.]").

{¶30} The second *Teaff* factor requires the article be appropriated to the use of

the land:

> The Supreme Court in *Zangerle* [*v. Republic Steel Corp.*, 144
> Ohio St. 529, 530, 60 N.E.2d 170, 171 (1945)] succinctly
> explained the crux of this element:
>
> "The general principle to be kept in view in determining
> whether what was once a chattel has become a fixture is the
> distinction between the business which is carried on in or upon
> the premises, and the premises. The former is personal in its
> nature, and articles that are merely accessory to the business,
> and have been put on the premises for this purpose, and not
> as accessions to the real estate, retain the personal character
> of the principal to which they belong and are subservient. But
> articles which have been annexed to the premises as
> accessory to it, whatever business may be carried on upon it,
> and not peculiarly for the benefit of a present business which
> may be of temporary duration, become subservient to the
> realty and acquire and retain its legal character." *Id.,* at
> paragraph seven of the syllabus.
>
> Thus, if an article is particular to the business conducted on
> the realty rather than general to the realty itself, it retains its
> character as personal property. This is often referred to as a
> 'trade fixture,' which is removable by the affixing party when
> the business is moved. *Rescina v. Kaperak* (Nov. 25, 1992),
> Cuyahoga App. No. 61465, unreported, 1992 Ohio App.
> LEXIS 5941, at *10-11; *Call v. Banc Ohio Natl. Bank* (Aug.18,
> 1992), Crawford App. No. 3-92-3, unreported, 1992 Ohio App.
> LEXIS 4175, at *6-7. If the opposite holds true, the character
> of the article takes on the character of realty. *Zangerle.*"

*G & L Invests*, 1998 WL 553213, at *3-4.

9

Case No. 2020-T-0042

{¶31} Here, the property at issue is artwork. Although the addition to the museum was built with the specific purpose of housing the mural, including the frame and trench lighting specific to its dimensions, it does not follow that the mural itself is an accession to the real estate. This is not a mural painted onto the bricks and mortar of a building, but a collection of terra-cotta tiles that has been displayed elsewhere and that Butler acquired, restored, and relocated to the Trumbull County branch. The work can be moved and displayed at other locations, although with significant time and cost due to the grand scale of the piece. Because artwork is particular to Butler's business of operating an art gallery and this work was displayed at the Trumbull County branch for this purpose, this factor does not support the theory that it is a fixture.

{¶32} The third and final *Teaff* factor is intent to create a fixture. This is often deemed the most important factor. *See Masheter*, 37 Ohio St.2d at 73-74. The intent to affix the personal property to the realty alone is not the focus but whether there was an intent to devote the property to the use or service of the real estate. *Id.* at 74-75.

> "[I]t is not necessarily the real intention of the owner of the chattel which governs. His apparent or legal intention to make it a fixture is sufficient. This intention ought to be apparent, from the situation and surroundings to those who may deal with or become interested in the real estate to which the chattel is attached. His intention not to make it a part of the realty must not be secret, but may be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, the purpose and use for which the annexation is made, the utility in use or the indispensability of the combination when the chattel is once attached to the realty in the use of the whole, and the relationship of the owner of the chattel to the owner of the realty and to others who may become interested in or owners of the property. The fact that a chattel attached to realty is or is not a fixture must appear from an inspection of the property itself, in the absence of actual notice to the

contrary, or of such circumstances as would put a prudent person upon inquiry to ascertain the fact."

*Household Fin. Corp. v. BancOhio*, 62 Ohio App.3d 691, 694-95, 577 N.E.2d 405 (2d Dist.1989), quoting *Holland Furnace Co.*, 135 Ohio St. at 52-54.

{¶33} Here, it is undisputed that the terra-cotta mural was gifted by its previous owner to Butler, and Butler subsequently displayed it at the Trumbull County branch. After acquiring the mural, Butler initiated fundraising for the construction of the addition to the branch to display the artwork, including the custom-built rotating frame.

{¶34} Louis Zona, director of Butler, testified at the hearing that he had raised approximately $350,000 to build the addition to house the mural. Zona maintained that the frame holding the mural was constructed in such a way that the mural could be removed if the museum was requested to send it as a travelling exhibit. The back of the frame has been used for, and could continue to be used for, displaying other artwork. Moreover, once the mural is removed, Butler could repair any damage to the plywood on the front of the frame, which could also house other artwork.

{¶35} Butler hired and paid Gilmore Design, owned by Bart Joe Gilmore, and he testified that he designed and constructed the addition to house the mural at the Trumbull County branch. He also hung the mural and explained that it was hung with the intention that the piece could be disassembled and removed in approximately ten days with limited damage to some plywood on the display frame, which is repairable.

{¶36} John Anderson, an active member of Medici and prior member of Butler, testified that the museum addition and the metal frame housing the mural would not have been built had Butler not acquired the mural for display at the Trumbull County branch.

11

Anderson maintained that the addition was specifically designed to house the mural and that Butler had declared the mural would be permanently placed in the building.

{¶37} After the hearing, in support of its summary judgment motion, Medici attached affidavits of John A. Anderson, John A. Anderson, II, and Ned Gold. Butler moved to strike the affidavits for several reasons, including that the pretrial procedure used here anticipated that all evidence used in support of summary judgment would be submitted at the hearing. The trial court noted in its entry that, although the purpose of the hearing was to receive all summary judgment evidence, the affidavits were properly considered under Civ.R. 56. The court then proceeded to review "ALL" the evidence before it.

{¶38} In the Anderson affidavits, Anderson and Anderson II averred that they were the administrator of the Taylor Winfield Foundation and a trustee of Medici, respectively, between 2009-2010. At that time, the Andersons maintained that they were approached by Zona, who was seeking assistance in construction costs for an addition to house the mural. The Andersons maintained that the Taylor Winfield Foundation and Medici did assist with the costs "with the understanding that the Mural would be located to and remain at that Howland Township location into perpetuity as the addition was to have been constructed for no other purpose whatsoever."

{¶39} In Gold's affidavit, he averred that, in 2009, he was the president of Trumbull 100. At that time, he was approached by Chuck Bentz, the fundraising representative for Butler, who sought assistance in underwriting an addition to the Butler to house the mural. Around that time, Gold received an email from Zona stating that the mural would "become a landmark for the community." After members of Trumbull 100 expressed concern that

Case No. 2020-T-0042

the mural would not remain in Trumbull County, Bentz "in no uncertain terms, responded that the Soulages was not going anywhere and would remain in Trumbull County, or words of similar import[.]"  Gold averred that, after he shared Bentz' response with Trumbull 100, it contributed $29,000 to assist with the construction cost, with "the understanding that the Mural would be located to and remain at that Howland Township location, for enhancement of the quality of life for Trumbull County citizens, into the indefinite future[.]"

{¶40}  On appeal, Medici relies in part on the representations made by Zona and Bentz, as relayed in the affidavits, to support its argument that Butler specifically expressed an intent to create a fixture.  However, the statements were indisputably made in the context of Butler raising funds for an addition to display its artwork in a building where it intended a long-term presence pursuant to a 99-year lease, prior to Medici's exercise of its right to terminate the lease.

{¶41} Regardless, Medici argues that the building of the addition and the statements made by Butler agents reasonably imply an intent of Butler to make a permanent accession to the freehold.  Thus, Medici essentially argues that Butler's intent was to divest itself of ownership upon installation of a valuable mural by a renowned artist that it had specifically sought and to transfer ownership of the mural to the freehold, owned by Medici.  Under such a theory, Butler's intent was to relinquish ownership of the mural to Medici, without any assurances of Medici as to whether it would continue to display the mural, thereby allowing Medici to retain, remove, sell, or otherwise dispose of the mural.  The evidence does not reasonably imply such an extraordinary intention.

13

**{¶42}** Based on the foregoing, no genuine issue as to any material fact exists, as reasonable minds can reach only one conclusion, i.e., that the mural is not a fixture, and as such, summary judgment on this claim was appropriate. Thus, Medici's second argument lacks merit.

**{¶43}** Medici's third and fourth arguments contend that the undisputed facts show the establishment of a charitable trust and, alternatively, that genuine issues of material fact remain preventing summary judgment and requiring a trial on the issue of whether a charitable trust was created. For the reasons stated, we disagree with both contentions.

**{¶44}** In Medici's amended complaint, it alleged that it and several other art patrons donated to underwrite the cost of the addition to the building to permanently display the mural at that location. Medici sought judgment "determining and declaring that the Mural has become the res of a charitable trust, legally owned by the Defendant for the benefit of the public, to be displayed and appreciated by the public into perpetuity at the branch museum's addition into which it has been integrated."

**{¶45}** "[T]o prove the existence of a charitable trust, a party must establish three elements: 1) a fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction; 2) as the result of a manifestation of intention to create the trust; 3) which subjects an individual by whom the property is held to fiduciary duties to deal with this property within this state for any charitable, religious, or educational purpose." *State ex rel. Atty. Gen. v. Vela*, 2013-Ohio-1049, 987 N.E.2d 722, ¶ 25 (5th Dist.); R.C. 109.23(A).

**{¶46}** In the summary judgment materials, Medici maintained that the donors, specifically the non-party Trumbull 100, required assurances that the mural remain in

14

Trumbull County prior to donating to the addition.  Medici maintains that Bentz' statement that the mural was not going anywhere demonstrated that "Butler, as Trustee, would retain legal title to the Mural, but maintain it in Howland, for the benefit of the Trumbull County art appreciation community, into the indefinite future."

{¶47} Medici refers to the donors to the addition as the settlors of the trust. However, the donors' contributions were not used in obtaining the mural.  It is undisputed that the prior owner of the terra-cotta mural gifted it to Butler, who then chose to display it in Trumbull County.  Donor funds were sought to assist with the cost of constructing the addition but were not used to secure the artwork itself.  And Butler is not seeking to remove the addition, which will continue to be available to house and display art after it removes the mural.

{¶48} Medici also relies on the statements of Butler's agents as expressing an intent to hold the mural in trust.  However, these statements must again be placed in the undisputed context in which they were made.  As set forth in our discussion of intent with regard to fixtures, the statements were made when fundraising for an addition to the Medici building, at a point in time when Butler intended a long-term presence at the building.  The statements were not made as an irrevocable duty to forever display art in a building that it did not own, and in which it held no right to control permanent display of any artwork.  Given the unrefuted evidence presented in the summary judgment proceedings, an inference that Butler intended to impose upon itself such a duty is patently unreasonable.

{¶49} Accordingly, Medici's third and fourth arguments under its sole assigned error lack merit.

Case No. 2020-T-0042

{¶50} The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.